Agreement

by and between

Superior Living Products, LLC

and

Rafael Alberto Morales

Dated

December    , 2006

Confidential and Proprietary Information of Superior Living Products. Not to be disclosed to another party without the prior written consent of Superior Living Products.

06/06/2007  23:26  3015911391                    CANON                         #0183 P.003 /019

## Agreement

This Agreement (the "Agreement") is made and entered into by and between Superior Living Products, a Pennsylvania limited liability corporation with a location at 9 South Washington Street, Boyertown, PA 19512 (hereinafter "SUPERIOR") and Rafael Alberto Morales, Insert DBA / Corporate info name, address, telephone (hereinafter **"RAFAEL ALBERTO MORALES"**) (individually, a "Party; collectively, "the Parties").

WHEREAS, SUPERIOR is engaged in the business of distributing bath and related products (hereinafter collectively referred to as the "Products");

WHEREAS, SUPERIOR is the exclusive owner and Licensor of all Superior Living Products;

WHEREAS, as of the date of this Agreement, the sole owners of Superior Living Products, LLC are Joseph P. Scott and Lou Consoli;

WHEREAS, RAFAEL ALBERTO MORALES is engaged in the business of bathroom renovation, bathroom product installation and bathroom product sales; and

WHEREAS, as of the date of this Agreement, the sole owners and/or shareholders of RAFAEL ALBERTO MORALES are as follows _____;

WHEREAS, RAFAEL ALBERTO MORALES wishes to purchase SUPERIOR's products in an effort to market, sell, distribute and install SUPERIOR's Products as part of RAFAEL ALBERTO MORALES's business;

THERFORE, the Parties hereby agree as follows:

**1. Definitions** (not otherwise defined in the body of this Agreement or an Attachment).

**"RAFAEL ALBERTO MORALES Customer"** means a person, company, organization, government division, sub-distributor, etc. who acquires Products as a result of RAFAEL ALBERTO MORALES's marketing, sales, distribution and/or installation.

**"Effective Date"** is the date this Agreement is signed by SUPERIOR.

**"Product(s)"** are those SUPERIOR bath and other products that SUPERIOR may offer from to time.

**"Territory"** means the specific counties in Maryland as described in Exhibit "B", subject to modification by SUPEROR as set forth in the Agreement Paragraph entitled "Licensed Territory".

**2. Notices**

Any notice required by this Agreement shall be in writing and addressed to the other Party at the

address set forth herein, or at such other address as either Party may designate from time to time. Notice is deemed given (i) when delivered personally, (ii) when sent by confirmed facsimile, (iii) 48 hours after deposit in the U.S. mail by registered or certified mail, return receipt requested, postage prepaid, or (iv) 24 hours after delivery to a public or private express mail service for overnight delivery.

**Notices to SUPERIOR:**
Name:       Joseph P. Scott
Title:      Vice President
Address:    9 S. Washington St., Boyertown, PA 19512
Facsimile:  888-525-6331
Telephone:  888-526-2486 ext. 81

**With a copy to:**
Name:       Carla Trongone, Esquire
Address:    W. 8th Street, Lansdale, PA 19446
Facsimile:  215-362-9349
Telephone:  215-362-9347

**Notices to RAFAEL ALBERTO MORALES:**
Name:       Rafael Alberto Morales
Title:      President
Address:    3505 Vintage Spring Terrace, Olney, Maryland 20832
Facsimile:  301-591-1391
Telephone:  301-591-1391

### 3. Term

Subject to the early termination provisions set forth herein, the term of this Agreement is one year from the Effective Date (the **"Initial Term"**). Upon expiration of the Initial Term this Agreement shall automatically renew for successive terms of one year (an **"Extension"**), subject to the termination provisions contained herein.

### 4. Appointment

Subject to the terms and conditions set forth herein, SUPERIOR hereby appoints RAFAEL ALBERTO MORALES as SUPERIOR's independent, authorized, exclusive marketer, seller, distributor and installer of the Products within the territory specified Commencing on the date this Distributor Agreement is executed by the SUPERIOR and Rafael Alberto Morales and the distributorship fee as described in Exhibit "B" is received and accepted by SUPERIOR (the "Effective Date"), SUPERIOR hereby appoints and Rafael Alberto Morales accepts such appointment as a Distributor of SUPERIOR's products set forth in Exhibit "A", attached hereto and incorporated herein, as the same may be amended from time to time by SUPERIOR (the "Products"). Rafael Alberto Morales shall possess an exclusive marketing area as set forth in Exhibit "B", attached hereto and incorporated herein, as the same may be amended from time to time by mutual agreement of the parties (the "Territory"). SUPERIOR will support and ship only to those locations which are

06/06/2007  23:26  3015911391                CANON                              #0163 P.005 /019

authorized by SUPERIOR. Rafael Alberto Morales shall immediately notify SUPERIOR of the removal of an existing office. RAFAEL ALBERTO MORALES hereby accepts such appointment. RAFAEL ALBERTO MORALES's marketing, selling, distributing and installing of walk-in bath tubs and walk-in bath tub products shall solely be that of SUPERIOR's Products during the term of this Agreement and any term Extension. SUPERIOR hereby grants to RAFAEL ALBERTO MORALES a non-transferable, non-sublicensable, exclusive license that may be solely exercised within the Territory to market, sell, distribute and install Products directly to RAFAEL ALBERTO MORALES Customers in the Territory. The Parties agree that RAFAEL ALBERTO MORALES (i) is an independent contractor hereunder for tax and all other purposes and is not an employee, agent, or franchise of SUPERIOR, and (ii) has no right or authority to act or create any obligation, express or implied, on behalf of SUPERIOR.

### 5. Licensed Territory

RAFAEL ALBERTO MORALES's exclusive Territory shall be specific counties in Maryland as set forth in Exhibit "B" and incorporated herein,. SUPERIOR reserves the right to reduce RAFAEL ALBERTO MORALES's exclusive Territory or to terminate this Agreement if RAFAEL ALBERTO MORALES's fails to achieve the quotas as set forth in Exhibit "C" and incorporated herein. The first Monthly Period commences on the first day of the first calendar month that is six months after the Effective Date of this Agreement to allow for a ramp-up period for RAFAEL ALBERTO MORALES. The reduction of RAFAEL ALBERTO MORALES's exclusive Territory under this clause will be made in the sole discretion of SUPERIOR upon 30 days prior written notice to RAFAEL ALBERTO MORALES. Should SUPERIOR exercise their right to reduce the exclusive geographical territory of RAFAEL ALBERTO MORALES, in compliance with this clause, RAFAEL ALBERTO MORALES retains the right to continue sales within that remaining territory unless this contractual relationship has been terminated in accordance with this contract.

RAFAEL ALBERTO MORALES acknowledges that RAFAEL ALBERTO MORALES is not granted any rights under this Agreement to market, sell, distribute and install the Products outside the Territory set forth herein. RAFAEL ALBERTO MORALES will not market, sell, distribute and install Products outside the Territory, or deliver the Products to any party located outside the Territory, without obtaining the prior written consent from SUPERIOR. If RAFAEL ALBERTO MORALES receives from any party located outside the Territory an inquiry or order for a Product, RAFAEL ALBERTO MORALES will not accept such inquiry or order and will promptly refer such to SUPERIOR.

### 6. Representations / Acknowledgements

Each of the Parties represents that: (a) it has the right, power and authority to enter into, and to perform its obligations under, this Agreement; (b) the execution, delivery and performance of this Agreement have been duly authorized and approved by it; (c) this Agreement is a valid and binding agreement by it enforceable in accordance with its terms; (d) the execution, delivery and performance of this Agreement by it shall not breach or violate its articles of incorporation, bylaws, partnership agreement or other charter documents, as the case may be, or breach or violate or require the consent of any person under any contract, permit, judgment, order, law, regulation or other requirement applicable to it, to which it is a party or by which any of its assets are bound; and (e) the individual signing this Agreement on its behalf has full

authority to sign the Agreement and to bind it fully to the Agreement.

### 6.1 SUPERIOR

(a) In addition to the duties and obligations set out below or elsewhere in this Agreement, SUPERIOR shall comply with all United States of America laws and regulations applicable to its business operations and its provision of the Products and maintain insurance coverage applicable to its business operations. SUPERIOR makes no warranty, express or implied, that the Products shall comply with any local government law and RAFAEL ALBERTO MORALES hereby accepts all risks and holds SUPERIOR harmless for such compliance with respect to Products purchased by RAFAEL ALBERTO MORALES.

(b) SUPERIOR shall provide RAFAEL ALBERTO MORALES with initial training at SUPERIOR'S Boyertown location, or any such location chosen by SUPERIOR, sales aids and technical information with respect to the Services.

### 6.2 RAFAEL ALBERTO MORALES

(a) In addition to the duties and obligations set out below or elsewhere in this Agreement, RAFAEL ALBERTO MORALES shall comply with all applicable laws, rules, decrees and regulations of those countries in which RAFAEL ALBERTO MORALES conducts business and shall maintain a minimum of $1,000,000 in insurance coverage applicable to its business operations and the solicitation, sale, distribution and installation of the Products. RAFAEL ALBERTO MORALES shall furnish SUPERIOR proof of its insurance coverage and shall immediately notify SUPERIOR of any change in RAFAEL ALBERTO MORALES's insurance coverage.

(b) It is expressly agreed and understood by RAFAEL ALBERTO MORALES that SUPERIOR makes no warranty, express or implied, that the Products shall comply with any local government law and RAFAEL ALBERTO MORALES hereby accepts all risks and holds SUPERIOR harmless for such compliance with respect to Products purchased by RAFAEL ALBERTO MORALES.

(b) RAFAEL ALBERTO MORALES shall represent SUPERIOR in a commercially reasonable, ethical and professional manner. In furtherance of the foregoing, RAFAEL ALBERTO MORALES agrees not to engage in any business practice that may provide grounds for any complaint to legal authorities.

(c) RAFAEL ALBERTO MORALES shall attend SUPERIOR sponsored sales training sessions and obtain sales certifications for those services designated by SUPERIOR as requiring certification. Superior will provide to RAFAEL ALBERTO MORALES "train the trainer" training for all necessary items; RAFAEL ALBERTO MORALES will train all others within the "Territory". All trainers must be trained in the sales process by SLP owner, Lou Consoli, or an alternate Trainer, as deemed appropriate by Superior Living Products.

(d) RAFAEL ALBERTO MORALES shall, on an ongoing basis, promote additional or new Walk-in-Bath related Products. On or about the Effective Date, and annually thereafter,

06/06/2007  23:27  3015911391                    CANON                           #0183 P.007 /019

RAFAEL ALBERTO MORALES shall provide SUPERIOR with a business plan outlining its proposed methods to promote new sales.

(e) RAFAEL ALBERTO MORALES shall provide all Product support to its RAFAEL ALBERTO MORALES Customers, without set off or reduction in price from SUPERIOR, including, but not limited to: (i) providing any required maintenance on the Products; (ii) provide technical services related to the Products, including all advisory, installation and support services as required by SUPERIOR; and (iii) install all Products at RAFAEL ALBERTO MORALES Customer's locations including, as applicable, reinstallation of repaired or replaced Products or parts.

(f) RAFAEL ALBERTO MORALES's marketing, selling, distributing and installing of walk-in bath tubs and walk-in bath tub products shall be exclusively limited to only SUPERIOR'S Products during the Term and any term Extension.

## 7. RAFAEL ALBERTO MORALES's Use of Subcontractors/Sub-Distributors

RAFAEL ALBERTO MORALES may be utilizing Subcontractors to assist RAFAEL ALBERTO MORALES in selling and installation of Products. RAFAEL ALBERTO MORALES also may be distributing/selling the Products, or any portion thereof, to sub-distributors, original equipment manufacturers, value added resellers, systems integrators or other similar third parties (collectively, "Sub-distributors"). RAFAEL ALBERTO MORALES is solely responsible for the contracting, supervision, training, support and compensation of its Subcontractors and Sub-distributors. RAFAEL ALBERTO MORALES shall ensure that its Subcontractors and Sub-distributors comply with the terms of this Agreement applicable to RAFAEL ALBERTO MORALES's obligations hereunder, including, without limitation Territory restrictions on sales. If SUPERIOR reasonably determines that a Subcontractor or a Sub-distributor is endangering the reputation or business of SUPERIOR then SUPERIOR may, without incurring liability, require RAFAEL ALBERTO MORALES to discontinue their relationship with such Subcontractor or Sub-distributor. Any act by any Subcontractor or Sub-distributor of RAFAEL ALBERTO MORALES shall be deemed an act of RAFAEL ALBERTO MORALES and subject to RAFAEL ALBERTO MORALES's obligations hereunder, including RAFAEL ALBERTO MORALES's indemnification obligations. Upon termination of this Agreement, the right of Subcontractors and Sub-distributors to sell the Products shall also terminate.

## 8. Review of Sales Materials

All RAFAEL ALBERTO MORALES sales presentations, marketing materials, representations or claims about SUPERIOR or its affiliates, fulfillment materials, point of sale materials, brochures, and other marketing or advertising materials (collectively, "Marketing Materials") shall be subject to SUPERIOR's prior written approval and RAFAEL ALBERTO MORALES shall not use in any way Marketing Materials that have not been so approved in writing.

## 9. Indemnification

RAFAEL ALBERTO MORALES shall defend, indemnify and hold SUPERIOR, its officers,

directors, agents and employees harmless against any and all claims, suits, proceedings, damages, judgments and expenses (including reasonable attorneys' fees) or settlement thereof in connection with or arising from any third party, subcontractor, sub-distributor, and/or RAFAEL ALBERTO MORALES Customer claim based upon: (a) RAFAEL ALBERTO MORALES's marketing, distribution, sale and/or installation of the Products; (b) any warranties or representations made by RAFAEL ALBERTO MORALES or RAFAEL ALBERTO MORALES's agents, including RAFAEL ALBERTO MORALES's subcontractors and sub-distributors, with respect to the Products; or (c) injuries or damage to persons or property caused or claimed to have been caused by the negligent acts, errors or omissions of RAFAEL ALBERTO MORALES or RAFAEL ALBERTO MORALES's agents, including Subcontractors and Sub-distributors.

Neither party shall be liable to the other for any indirect, special, incidental, or consequential damages.

### 10. Product Orders and Payments

RAFAEL ALBERTO MORALES will submit purchase orders for SUPERIOR'S Products including the requested delivery date, no sooner than 30 days from the sale date, for the Products. Terms and conditions contained in any purchase order, confirmation, invoice, acknowledgement, release, acceptance or other written correspondence will not modify any terms of this Agreement and the terms of this Agreement shall be controlling over any inconsistent or conflicting terms. Delivery date requests and accommodations will be addressed for each individual purchase order and SUPERIOR will use best efforts to accommodate RAFAEL ALBERTO MORALES's delivery requests.

All purchase orders shall identify RAFAEL ALBERTO MORALES and shall be sent via electronic mail to the following address:

|  |  |
|---|---|
| Contact name: | Mr. Joseph P. Scott |
| Address: | Superior Living products LLC |
|  | 9. S. Washington Street |
|  | Boyertown, PA 19512 |
| e-mail: | jscott@superiorlivingproducts.com |

Purchase order will be deemed accepted after written confirmation from Superior. RAFAEL ALBERTO MORALES will be charged for all purchase orders once accepted in writing by SUPERIOR and RAFAEL ALBERTO MORALES may not reschedule pick up dates for the Products purchased. Payment is due immediately from RAFAEL ALBERTO MORALES upon recognition of receipt of Purchase Order by SUPERIOR. All payments made by RAFAEL ALBERTO MORALES under this Agreement must be made in United States currency, by a payment method acceptable to SUPERIOR in its sole discretion.

RAFAEL ALBERTO MORALES shall be solely responsible for and shall pay, and shall indemnify and hold SUPERIOR harmless from and against, all taxes, duties and levies directly imposed by all foreign, federal, state, local or other taxing authorities (including,

without limitation, export, sales, use, excise, and valued-added taxes) based on the transactions or payments under this Agreement.

## 11. Pricing

Initial pricing for Products ordered pursuant to this Agreement are set forth in Attachment A and is valid for 30 days from the Effective Date of this Agreement. Superior may alter its pricing on any and all Products upon thirty days written notice to RAFAEL ALBERTO MORALES and such price change notices will be valid for no more than 30 days after RAFAEL ALBERTO MORALES receives the price change notice, unless a shorter expiration date is indicated on the notice.

- **11.1. Rafael Alberto Morales's Sales.** RAFAEL ALBERTO MORALES shall market and sell Products only to prospects within RAFAEL ALBERTO MORALES exclusive territory, with the exception provided in paragraph (11.2) below. Rafael Alberto Morales will Market and Advertise all Products as described in Exhibit "A" as well as all new lines added by SUPERIOR. Rafael Alberto Morales shall sell Products and Installation of Products ('Services") within 20% of the suggested SUPERIOR retail prices as described in Exhibit "A". Rafael Alberto Morales and its sub-contractors will carry the proper licenses and insurances for in-home sales and installations. Rafael Alberto Morales will provide SUPERIOR with current client base and existing leads. Rafael Alberto Morales agrees that the construction and quality of each installation is in compliance with the plans provided by SUPERIOR as well as all local codes and ordinances.
- **11.2.** Rafael Alberto Morales may market and sell Products in unsecured non-exclusive territories elsewhere in the home state of the Rafael Alberto Morales territory, with written permission from SUPERIOR, until an application is submitted for a new exclusive territory.
- **11.3.** SUPERIOR at its sole discretion will offer the Rafael Alberto Morales the right of first refusal to acquire additional exclusive territories bordering Rafael Alberto Morales's current licensed territory.

## 12. Delivery

SUPERIOR will process all orders from RAFAEL ALBERTO MORALES for all Products and ship them directly to the client unless, a secondary destination is agreed upon by SUPERIOR and the final destination of the Product is within Rafael Alberto Morales's Territory. All shipping and transportation costs shall be paid by RAFAEL ALBERTO MORALES. All risk of loss shall pass to RAFAEL ALBERTO MORALES upon SUPERIOR's tender of delivery, including, but not limited to, freight, taxes, customs, duties or similar tariffs and fees, shipping and insurance charges.

## 13. SUPERIOR'S Limited Warranty

SUPERIOR warrants to RAFAEL ALBERTO MORALES that all of the Products will be free from defects in material and workmanship for a period of five (5) years, after the date of delivery to RAFAEL ALBERTO MORALES, on the following parts: motor, manifold, drain system, valve and the door. The door seal on each bathtub is warranted for the lifetime of the original purchaser from dealer, after the date of delivery to RAFAEL ALBERTO MORALES. It is the sole responsibility of RAFAEL ALBERTO MORALES to provide SUPERIOR with appropriate and detailed customer, bathtub, sales date, and "location of sale" information, within 10 days from any bathtub sale date, to effect a valid warranty. Without such information, SUPERIOR will deny warranty liability to any RAFAEL ALBERTO MORALES customer claiming product failure and/or the right to a warranty. SUPERIOR's liability, **and RAFAEL ALBERTO MORALES's sole and exclusive remedy**, is limited to repair and/or replacement of the nonconforming Product or part. Within fifteen days of discovering any such nonconformity, RAFAEL ALBERTO MORALES shall furnish SUPERIOR with a written description of the claimed nonconformity. RAFAEL ALBERTO MORALES shall return, freight paid by Superior, only those Products or parts claimed to be nonconforming during the warranty period; all returns will be requested by Superior, and no parts will be sent without the prior approval of Superior. All Products replaced under this warranty shall be warranted for the remainder of the original warranty period or sixty (60) months, whichever is longer. All RAFAEL ALBERTO MORALES Customer claims, including, without limitation, subcontractor and sub-distributor claims, under this limited warranty must be presented and transmitted through RAFAEL ALBERTO MORALES to SUPERIOR. Upon receipt and inspection of the nonconforming Product or Product part, and time-stamped photo and written description of the defect, if SUPERIOR determines in its sole discretion that the delivered Product or Product part failed to conform to the current Product specifications at the time of delivery to RAFAEL ALBERTO MORALES, SUPERIOR shall make reasonable efforts promptly to repair or replace the Product or Product part that is claimed to be defective in accordance with the foregoing procedures. In no event shall the SUPERIOR be liable for any damages caused by delay in providing a remedy under the foregoing warranty. THE SOLE AND EXCLUSIVE REMEDY FOR BREACH OF WARRANTY IS SET FORTH IN THIS PARAGRAPH. THERE ARE NO OTHER WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ANY PRODUCTS. SUPERIOR HEREBY DISCLAIMS ALL STATUTORY OR IMPLIED WARRANTIES, INCLUDING, WITHOUT LIMITATION, ANY WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE AND NON-INFRINGEMENT, AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, COURSE OF PERFORMANCE OR USAGE OF TRADE. SUPERIOR DOES NOT WARRANT THAT THE SUPERIOR PRODUCTS SHALL MEET ANY RAFAEL ALBERTO MORALES CUSTOMER, SUBCONTRACTOR AND SUB-DISTRIBUTOR REQUIREMENTS. RAFAEL ALBERTO MORALES IS NOT AUTHORIZED TO MAKE ANY WARRANTY OR REPRESENTATION CONCERNING THE PRODUCTS TO RAFAEL ALBERTO MORALES CUSTOMERS, SUBCONTRACTORS AND SUB-DISTRIBUTORS.NOTWITHSTANDING ANYTHING IN THIS AGREEMENT, IN NO EVENT SHALL SUPERIOR'S AGGREGATE LIABILITY ARISING UNDER, WITH RESPECT TO OR IN CONNECTION WITH THIS AGREEMENT EXCEED THE TOTAL MONIES PAID BY RAFAEL ALBERTO MORALES TO SUPERIOR UNDER THIS AGREEMENT DURING THE ONE (1) MONTH PERIOD IMMEDIATELY PRECEDING THE DATE ON WHICH SUCH LIABILITY ARISES.

**SUPERIOR SHALL IN NO EVENT BE LIABLE WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT UNDER ANY CONTRACT, TORT (INCLUDING NEGLIGENCE AND STRICT LIABILITY), INDEMNITY OR OTHER LEGAL, CONTRACTUAL OR EQUITABLE THEORY FOR: (i) ANY INDIRECT, SPECIAL, PUNITIVE, INCIDENTAL OR CONSEQUENTIAL DAMAGES, HOWEVER CAUSED AND WHETHER OR NOT ADVISED IN ADVANCE OF THE POSSIBILITY OF SUCH DAMAGES; OR (ii) DAMAGES FOR LOST PROFITS; OR (iii) COST OF PROCUREMENT OF SUBSTITUTE GOODS.**

### 14. Termination.

(a) This Agreement may be terminated prior to expiration of the Initial Term or any Extension by SUPERIOR immediately upon written notice to RAFAEL ALBERTO MORALES if (i) RAFAEL ALBERTO MORALES has breached any of the representations, warranties, or covenants contained herein, (ii) RAFAEL ALBERTO MORALES or any Subcontractor or Sub-distributor commits any act that SUPERIOR determines in its reasonable discretion would harm SUPERIOR's business or reputation (such as, without limitation, acts of fraud, dishonesty or misrepresentation) or would impair RAFAEL ALBERTO MORALES's performance hereunder, (iii) an owner or employee of RAFAEL ALBERTO MORALES that SUPERIOR deems critical to RAFAEL ALBERTO MORALES's performance hereunder resigns, is terminated or loses management control of RAFAEL ALBERTO MORALES's business, (iv) the other party becomes insolvent, is unable to pay its debts as they become due or ceases to conduct business in the normal course, (v) if the number of nonconforming Products returned by RAFAEL ALBERTO MORALES exceeds SUPERIOR'S expectations, (vi) at any time after the first six months of the Agreement RAFAEL ALBERTO MORALES orders less than eight standard walk-in bath tub units per month or (vii) RAFAEL ALBERTO MORALES owes SUPERIOR any monies for more than thirty (30) days.

(b) This Agreement may be terminated prior to expiration of the Initial Term or any Extension by RAFAEL ALBERTO MORALES immediately upon written notice to SUPERIOR if (i) SUPERIOR has breached any of the representations, warranties, or covenants contained herein.

(c) Upon any termination or expiration of this Agreement: (i) all rights and licenses granted to RAFAEL ALBERTO MORALES hereunder shall cease; (ii) RAFAEL ALBERTO MORALES shall, at the expiration of its inventory of Products, (a) cease all use and distribution/sale of the Products; (b) discontinue any use of the SUPERIOR Marks (as defined below); (c) cease to promote, solicit or procure orders for the Products; and (d) return all Confidential Information and all related materials and copies thereof to SUPERIOR; (iii) the due date of all monies due SUPERIOR shall automatically be accelerated so that such payments shall become due and payable on the effective date of termination, even if longer terms had been provided previously. In addition to the foregoing, RAFAEL ALBERTO MORALES agrees that it shall not, following termination of this Agreement, act in any way to damage the reputation or goodwill of SUPERIOR or any Products. Except as otherwise expressly provided herein, upon any termination of this Agreement, RAFAEL ALBERTO MORALES shall not be entitled to, and to the fullest extent permitted by law waives, any statutorily prescribed or other compensation, reimbursement or damages for loss of goodwill,

06/06/2007  23:28  3015911391                    CANON                          #0183 P.012 /019

clientele, prospective profits, investments or anticipated sales, commitments or business opportunities of any kind. Notwithstanding termination of this Agreement, all obligations, indemnities, representations, warranties, rights and remedies that arose under this Agreement shall survive the termination of this Agreement, whether or not expressly provided herein.

## 15. Confidential Information

The Parties understand that it may have access to one another's Confidential Information while performing its obligations hereunder. **"Confidential Information"** means the terms of this Agreement, Product information, as well as information not generally known to the public relating to the Parties' business, including, without limitation, marketing, technical and financial data, business plans and practices, customer management systems, and all other information or data which a Party designates as "confidential", either orally or in writing. Regardless of the form in which it may exist, the Confidential Information shall be considered trade secrets and, in addition to the protections provided herein, shall be entitled to all protections given by law to trade secrets. The Parties understand and agree that the Confidential Information is a valuable and unique asset and that disclosure of such Confidential Information would be detrimental. Therefore, the Parties agrees to (i) not disclose any Confidential Information to third parties during or after the term of this Agreement, except with the written consent of the disclosing party or as required by law, administrative or court order (and then only with prior written notice to the disclosing party); and (ii) promptly destroy or return to all Confidential Information (and copies or compilations thereof) upon the disclosing parties written request.

## 16. Trademarks/Service Marks

RAFAEL ALBERTO MORALES may not use SUPERIOR's name, trademarks, service marks, logos or designs (collectively, the **"SUPERIOR Marks"**) without the prior written consent of SUPERIOR. Any use by RAFAEL ALBERTO MORALES of SUPERIOR Marks shall be subject to the continuing approval by SUPERIOR. RAFAEL ALBERTO MORALES hereby acknowledges that it has no property rights or claims to the SUPERIOR Marks and all right, title and interest in the SUPERIOR Marks belong to SUPERIOR. RAFAEL ALBERTO MORALES will, upon termination of this Agreement, immediately discontinue, at its expense, all use and display of the SUPERIOR Marks. Thereafter, RAFAEL ALBERTO MORALES will not use, either directly or indirectly, any of the SUPERIOR Marks or other names or marks so resembling the SUPERIOR Marks as to be likely to cause confusion, mistake or deceive the public.

## 17. No Third Party Beneficiaries

This Agreement is the entire agreement between the Parties concerning its subject matter and supersedes all prior agreements and understandings, whether or not written, and is not intended to confer upon any person, including RAFAEL ALBERTO MORALES's Customers, subcontractors and sub-distributors other than the Parties any rights or remedies hereunder.

### 18. Force Majeure

Any delay in the performance of any duties or obligations of either party (except the payment of money) will not be considered a breach of this Agreement if such delay is caused by a labor dispute, shortage of materials, fire, earthquake, flood, war, act of terrorism, or any other event beyond the control of such party, provided that such party uses reasonable efforts, under the circumstances, to notify the other party of the circumstances causing the delay and resumes performance as soon as possible.

### 19. Publicity

SUPERIOR shall be permitted to use the name of RAFAEL ALBERTO MORALES in publicity releases, advertising, or similar activities with the prior written consent of RAFAEL ALBERTO MORALES, which consent shall not be unreasonably withheld.

### 20. Choice of Law

This Agreement is to be construed in accordance with and governed by the internal laws of the State of Pennsylvania without giving effect to any choice of law rule that would cause the application of the laws of any jurisdiction other than the internal laws of the State of Pennsylvania to the rights and duties of the parties

### 21. Dispute Resolution

If the parties are unable to resolve any dispute, controversy or claim arising under this Agreement (each a Dispute), such Dispute will be submitted to the Vice President (or higher) of each of the Parties for Resolution. If such officers are unable to resolve the Dispute within 10 days after submission to them, the dispute shall be solely and finally settled by arbitration in accordance with Arbitration Rules of the American Arbitration Association ("AAA").

The arbitration panel shall be composed of three arbitrators, one of whom shall be chosen by SUPERIOR, one by RAFAEL ALBERTO MORALES and the third by the two so chosen. If both or either of SUPERIOR or RAFAEL ALBERTO MORALES fails to choose an arbitrator or arbitrators within 14 days after receiving notice of commencement of the arbitration or if the two arbitrators fail to choose a third arbitrator within 14 days after their appointment, then the director of the office of the American Arbitration Association in Philadelphia, Pennsylvania shall appoint the arbitrator or arbitrators required to complete the board.

The place of arbitration shall be in Philadelphia, Montgomery or Berks County Pennsylvania.

The arbitration panel shall commence proceedings no later than 60 days after the appointment of the third arbitrator.

Any monetary awards shall be made in U.S. dollars free of any tax or any other deduction (except as may be required by law). Monetary awards shall include interest from the date of breach to the date when the award is paid in full. The Arbitrator may not award punitive or special damages.

The award of the arbitration panel will be the sole and exclusive remedy between the parties regarding any and all claims and counterclaims with respect to the subject matter of the

dispute and shall be final and binding upon the parties.

Neither party shall be excused from performing its obligations hereunder during such arbitration.

## 22. Construction

The Parties have participated jointly in the negotiation and drafting of this Agreement. In the event an ambiguity or question of intent or interpretation arises, this Agreement shall be construed as if drafted jointly by the Parties and no presumption or burden of proof shall arise favoring or disfavoring any Party by virtue of the authorship of any of the provisions of this Agreement.

## 23. Amendments

This Agreement may be amended by the parties hereto at any time; provided, however, that any amendment must be by an instrument or instruments in writing signed by an authorized representative of the Party and delivered on behalf of each of the Parties hereto.

## 24. Severability

Any term or provision of this Agreement that is invalid or unenforceable in any situation in any jurisdiction shall not affect the validity or enforceability of the remaining terms and provisions hereof or the validity or enforceability of the offending term or provision in any other situation or in any other jurisdiction.

## 25. Language

This Agreement is executed in the English language. All notices sent hereunder shall also be in the English language.

## 26. Miscellaneous

This Agreement and any attachments hereto constitute the entire Agreement of the parties regarding the subject matter herein, and supersedes any prior understanding or agreements between them regarding its subject matter. In the event of a conflict between the terms of this Agreement and the terms of an Attachment, the terms of this Agreement shall control. In the event of a breach of this Agreement, RAFAEL ALBERTO MORALES acknowledges and agrees that SUPERIOR's damages will be substantial, the same will be extremely difficult or impossible to ascertain and money damages will not afford an adequate remedy. Therefore, in the event of any such breach, in addition to other remedies which may be provided by law, SUPERIOR shall have the right to enforce specific performance of the covenants contained in this Agreement by way of temporary and/or permanent injunctive relief in any court in addition to money damages. The illegality or unenforceability of any provision or portion of this Agreement shall not affect the legality or enforceability of any other provision or portion. RAFAEL ALBERTO MORALES may not assign or transfer its rights or obligations under this

Agreement without the prior written consent of SUPERIOR.

## 27. Entire Agreement

This Agreement represents the entire understanding of the parties of the subject matter herein. No modification or change of terms of this Agreement shall bind either party unless in writing signed by both parties

**IN WITNESS WHEREOF**, the parties hereto have duly executed this Agreement on the day and year set forth below.

**Superior Living Products**

By:_____
Print Name: _____
Title: _____
Date: _____

**Rafael Alberto Morales**

By:_____
Print Name: _____
Title: _____
Date: _____

06/06/2007  23:29  3015911391                    CANON                        #0183 P.016 /019

# Exhibit A

| Product | Distributor Cost(+S&H) | Suggested Retail(+S&H) | AVERAGE INSTALLED PRICE |
|---|---|---|---|
| Superior 1 | $3590.00 | $6795.00 | $10,900.00 |
| Superior 1 (wide) | $3890.00 | $6995.00 | $11,500.00 |
| Superior 2 | $3950.00 | $6995.00 | $11,500.00 |
| Superior 3 | $4195.00 | $7495.00 | $14,500.00 |
| Superior 4,5,6 | call for pricing | call for pricing | call for pricing |
| Bathlifter | $1350.00 | $2595.00 | $2950.00 set-up |
| Personal Response System | call for pricing | call for pricing | call for pricing |
| Personal Medication System | call for pricing | call for pricing | call for pricing |
| Adjustable Bed (King) | $3580.00 | $4980.00 | $5495.00 |

Estimated Shipping cost to all of Maryland is $300 for walk-in bathtubs.

06/06/2007  23:29  3015911391                    CANON                              #0183 P.017 /019

# Exhibit B
## Territory and Distributor Fee

Territory: Baltimore City, Baltimore County, Howard County, and Montgomery County

Total Population:      2,578,395

Population over 55:    459,768

Population under 65
with a Disability:     304,295

Total Target Market:   764,063* - per 2000 US Census Information
*Does not take into consideration non-domiciled part time residents.

Capital Investment for this territory:

Distributorship Fee: $20,871.63
Includes:
1 – 26" Walk-in bathtub for showroom
3 day training
Protected territory
Team building program – 'Hit the Ground Running initiative'
Ad Copy and invoice templates
Co-Op advertising program
Incentive program
In addition to the distributorship fee an additional $10,000 should be available for operating and advertising expenditures

# Census Information

**DP-2. Profile of Selected Social Characteristics: 2000**
Data Set: Census 2000 Summary File 3 (SF 3) - Sample Data
Geographic Area: **Baltimore County, Maryland**

| TOTAL POPULATION | |
|---|---|
| Population 5 to 20 years | 786,113 |
| With a disability | 161,433 |
|  | 13,370 |
| Population 21 to 64 years |  |
| With a disability | 433,820 |
|  | 73,758 |
| Population 55 years and over |  |
|  | 174,491 |

**DP-2. Profile of Selected Social Characteristics: 2000**
Data Set: Census 2000 Summary File 3 (SF 3) - Sample Data
Geographic Area: **Baltimore city, Maryland**

| TOTAL POPULATION | |
|---|---|
| Population 5 to 20 years | 608,481 |
| With a disability | 150,873 |
|  | 17,725 |
| Population 21 to 64 years |  |
| With a disability | 363,171 |
|  | 102,163 |
| Population 55 years and over |  |
|  | 145,094 |

**DP-2. Profile of Selected Social Characteristics: 2000**
Data Set: Census 2000 Summary File 3 (SF 3) - Sample Data
Geographic Area: **Howard County, Maryland**

| TOTAL POPULATION | |
|---|---|
| Population 5 to 20 years | 265,755 |
| With a disability | 57,422 |
|  | 3,594 |
| Population 21 to 64 years |  |
| With a disability | 151,751 |
|  | 16,418 |
| Population 55 years and over |  |
|  | 46,864 |

**DP-2. Profile of Selected Social Characteristics: 2000**
Data Set: Census 2000 Summary File 3 (SF 3) - Sample Data
Geographic Area: **Montgomery County, Maryland**

| TOTAL POPULATION | |
|---|---|
| Population 5 to 20 years | 918,046 |
| With a disability | 184,200 |
|  | 12,611 |
| Population 21 to 64 years |  |
| With a disability | 527,217 |
|  | 84,656 |

| Population 55 years and over | |
|---|---|
| | 93,319 |

# Exhibit C

Quotas for walk-in bathtubs sales will be implemented 6 months after the date of execution of this agreement. The "Superior Target" for each distributor is $50,000.00 in sales revenue by month six. After month six each distributor is required to purchase a minimum of six units per month and will be reviewed and averaged on a 6-month basis.