## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RAPHAEL MORALES** | : | |
| and | : | |
| **MILA MORALES** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | **CIVIL ACTION** |
| v. | : | |
| | : | **NO. 07-4419** |
| **SUPERIOR LIVING PRODUCTS, LLC** | : | |
| and | : | |
| **JOSEPH SCOTT** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

## ORDER

**AND NOW**, this _____ day of _____, 2008, in consideration of

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, and all papers in support

thereof and in opposition thereto, it is hereby **ORDERED** that the Motion is **GRANTED** and the

First Amended Complaint is dismissed with prejudice.

### BY THE COURT:

_____
                                                    J.

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAPHAEL MORALES<br>   and<br>MILA MORALES | :<br>:<br>:<br>: |
| Plaintiffs, | :<br>: |
| v. | :<br>: |
| SUPERIOR LIVING PRODUCTS, LLC<br>   and<br>JOSEPH SCOTT | :<br>:<br>:<br>: |
| Defendants. | :<br>: |

**CIVIL ACTION**

**NO. 07-4419**

## DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
## FIRST AMENDED COMPLAINT

Defendants, Superior Living Products, LLC and Joseph Scott, by and through

undersigned counsel, hereby move to dismiss all counts of Plaintiffs' First Amended Complaint

for the reasons set forth in the accompanying Memorandum.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

s/Scott P. Sigman

By:_____
George Bochetto, Esquire
David J. Perlman, Esquire
Scott P. Sigman, Esquire
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
Fx: (215) 735-2455

Dated: 11/12/2008

## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

RAPHAEL MORALES                         :
    and                             :
MILA MORALES                            :
                          :
          Plaintiffs,                  :
                          :   CIVIL ACTION
      v.                            :
                          :   NO. 07-4419
SUPERIOR LIVING PRODUCTS, LLC :
    and                             :
JOSEPH SCOTT                            :
                          :
        Defendants.                     :

## MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

### I.   INTRODUCTION

Although the relationship between the parties was contractual, Plaintiffs Raphael and

Mila Morales (collectively the "Morales") fail to disclose the written arbitration clause provision

which would require this case to be arbitrated. (See Dealership Agreement ¶21, attached hereto

as Exhibit "A.")  The Complaint should be dismissed on this basis.

Moreover, this dispute is based on an alleged promise made outside the language of the

contract, namely, that the tub to be delivered to Plaintiff Morales would be manufactured by

Superior.  As a matter of fact, Superior does not manufacture tubs, but subcontracts the

manufacture to an outside company, which in turn puts Superior's logo on the tub.  Nevertheless,

such an alleged oral promise cannot be the basis of a lawsuit since the Agreement contains clear

and unambiguous integration clauses. (See Dealership Agreement ¶26 and ¶27, Exhibit "A.")

Therefore, Plaintiffs fail to state a claim and the Complaint should be dismissed on this basis.

Apart from the arbitration clause and the integration clause, this remaining counts should also be dismissed. Most notably, Mila Morales has no viable claims since she was not a party to the contract and since a loss of consortium claim is improper for a contract dispute since there is no physical injury in this commercial case. Moreover, the non-contractual common law counts must be dismissed under the gist of the action doctrine. Furthermore, the breach of contract claim must be dismissed since the contract is void of any term requiring Superior itself to manufacture the tubs. The RICO claim itself is deficient for failing to identify which of the four RICO violations apply and for failing to allege a pattern of racketeering activity. The Unfair Trade Practices Claim must be dismissed because the transaction under which Raphael Morales was to become a dealer was not a consumer transaction.

## II.    STATEMENT OF FACTS

The only wrong specified in the First Amended Complaint is an alleged misrepresentation made during contract negotiations, that Superior, though it supplied dealers with bathtubs, did not manufacture them itself. (See First Amended Complaint ¶10.) Plaintiffs do not explain how the fact that Superior did not itself have a manufacturing plant and itself make the tubs is material. Notably, this alleged requirement that Superior manufacture the tubs is **not** a term of the contract; the Dealership Agreement no where says that Superior manufactures the tubs.

The First Amended Complaint alleges that Superior did indeed deliver the showroom tub that the Dealership Agreement states Superior will supply.[1]  (See First Amended Complaint ¶21.)  It was Plaintiff who, according to the First Amended Complaint, refused delivery of the showroom tub.  (See First Amended Complaint ¶23.)  The entire First Amended Complaint hinges on only one alleged wrong – an alleged representation during negotiations that Superior manufactured the tubs and its inability to supply one that Superior manufactured.

Again, Plaintiffs do not explain why Mila Morales is a plaintiff, though they were criticized for this in the Court's September 10, 2008 Order.  Mila Morales was not a party to the contract (Dealership Agreement) and thus should be dismissed from all Counts, with the exception of Loss of Consortium, which should be dismissed under the gist of the action doctrine.

Furthermore, the Dealership Agreement contains an arbitration clause requiring first submission of the dispute to Vice President and then arbitration before AAA, as set forth below:

### 21.  Dispute Resolution

If the parties are unable to resolve any dispute, controversy or claim arising under this Agreement (each a Dispute), such Dispute will be submitted to the Vice President (or higher) of each of the Parties for Resolution. If such officers are unable to resolve the Dispute within 10 days after submission to them, the dispute shall be solely and finally settled by arbitration in accordance with

---

[1]    Thus, the First Amended Complaint completely contradicts the original Complaint.  In the original Complaint, the supposed "fraud" was an alleged failure to deliver a showroom tub. Now Plaintiffs acknowledge that the showroom tub was delivered and concoct a completely new, equally false and ludicrous theory – that a company other than Superior manufactured the tubs.

Arbitration Rules of the American Arbitration Association
("AAA").

The arbitration panel shall be composed of three arbitrators, one of
whom shall be chosen by SUPERIOR, one by RAFAEL
ALBERTO MORALES and the third by the two so chosen. If both
or either of SUPERIOR or RAFAEL ALBERTO MORALES fails
to choose an arbitrator or arbitrators within 14 days after receiving
notice of commencement of the arbitration or if the two arbitrators
fail to choose a third arbitrator within 14 days after their
appointment, then the director of the office of the American
Arbitration Association in Philadelphia, Pennsylvania shall appoint
the arbitrator or arbitrators required to complete the board.  The
place of arbitration shall be in Philadelphia, Montgomery or Berks
County Pennsylvania.

The arbitration panel shall commence proceedings no later than 60
days after the appointment of the third arbitrator.

Any monetary awards shall be made in U.S. dollars free of any tax
or any other deduction (except as may be required by law).
Monetary awards shall include interest from the date of breach to
the date when the award is paid in full. The Arbitrator may not
award punitive or special damages.  The award of the arbitration
panel will be the sole and exclusive remedy between the parties
regarding any and all claims and counterclaims with respect to the
subject matter of the dispute and shall be final and binding upon
the parties.

Neither party shall be excused from performing its obligations
hereunder during such arbitration.

(See Dealership Agreement at ¶21, Exhibit "A.")

It also states that an arbitration award is the sole and exclusive remedy.  (See *Id.*)  It also bars

punitive damages.  (See *Id.*)

Moreover, the Dealership Agreement has integration clause, as set forth below:

4

### 26. Miscellaneous

This Agreement and any attachments hereto constitute the entire Agreement of the parties regarding the subject matter herein, and supersedes any prior understanding or agreements between them regarding its subject matter. In the event of a conflict between the terms of this Agreement and the terms of an Attachment, the terms of this Agreement shall control.

(See Dealership Agreement at ¶26, Exhibit "A.")

### 27. Entire Agreement

This Agreement represents the entire understanding of the parties of the subject matter herein.  No modification or change of terms of this Agreement shall bind either party unless in writing signed by both parties.

(See Dealership Agreement at ¶27, Exhibit "A.")

The facts of this case are as follows: On or about December 25, 2006, Defendant Morales (by himself) and Plaintiff Superior (by itself) executed a Dealership Agreement for the sale of walk-in bathtubs for which Plaintiff Morales was to be an affiliated agent/dealer. To enter into the contract, Plaintiff Morales paid Defendants approximately $20,871.63. To satisfy the terms of the contract, Defendant, Superior, provided Plaintiff Morales with an exclusive marketing area described in the Agreement, provided him with a sample tub for Plaintiff Morales, trained Plaintiff Morales, and provided assistance with marketing and leads. However, when Defendant Superior sent Morales the sample tub, it was refused and sent back.

The First Amended Complaint fails to properly identify the essential terms of the Agreement.  The Dealership Agreement was between Superior Living Products and Rafael Morals; however, Plaintiffs incorrectly name Joseph Scott, individually, as a defendant and Mila Morales as a plaintiff.

In the hope that at least something will stick, Plaintiffs also alleged negligent misrepresentation (Count I), fraudulent misrepresentation (Count II), breach of contract (Count III), fraud (Count IV), RICO violation (Count V), Unfair Trade Practices Act violation (Count VI), Loss of Consortium (Count VII), and Punitive Damages.[2]

### III.   ARGUMENT

#### A.   This case must be dismissed due to arbitration clause.

It is well-settled that the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for the court to decide. *Shadduck v. Christopher J. Kaclik, Inc.*, 713 A.2d 635, 637 (Pa. Super. 1998). Pennsylvania law advocates strict construction of arbitration agreements and dictates that any doubts or ambiguity as to arbitrability be resolved in favor of arbitration. *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1171 (Pa. Super. 1997). The fundamental rule in construing a contract is to ascertain and give effect to the intention of the parties. *Lower Frederick Township v. Clemmer*, 543 A.2d 502, 510 (Pa. 1988). "When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision." *Midomo Co. Inc. v. Presbyterian Housing Dev. Co.*, 739 A.2d 180, 186 (Pa. Super. 1999); *Messa v. State Farm Ins. Co.*, 641 A.2d 1167, 1168 (Pa. Super. 1994).

---

[2]    The "Punitive Damages" request is found within the Prayer for Relief, a claim which is expressly barred by the Dealership Agreement in ¶21.

Here, the Dealership Agreement entered into by both parties contained a specific section dealing with "Dispute Resolution." As set forth below, the clear and unambiguous language of the written arbitration provision requires that this case be sent to arbitration.

### 21.  Dispute Resolution

If the parties are unable to resolve any dispute, controversy or claim arising under this Agreement (each a Dispute), such Dispute will be submitted to the Vice President (or higher) of each of the Parties for Resolution. If such officers are unable to resolve the Dispute within 10 days after submission to them, the dispute shall be solely and finally settled by arbitration in accordance with Arbitration Rules of the American Arbitration Association ("AAA").

The arbitration panel shall be composed of three arbitrators, one of whom shall be chosen by SUPERIOR, one by RAFAEL ALBERTO MORALES and the third by the two so chosen. If both or either of SUPERIOR or RAFAEL ALBERTO MORALES fails to choose an arbitrator or arbitrators within 14 days after receiving notice of commencement of the arbitration or if the two arbitrators fail to choose a third arbitrator within 14 days after their appointment, then the director of the office of the American Arbitration Association in Philadelphia, Pennsylvania shall appoint the arbitrator or arbitrators required to complete the board.  The place of arbitration shall be in Philadelphia, Montgomery or Berks County Pennsylvania.

The arbitration panel shall commence proceedings no later than 60 days after the appointment of the third arbitrator.
Any monetary awards shall be made in U.S. dollars free of any tax or any other deduction (except as may be required by law). Monetary awards shall include interest from the date of breach to the date when the award is paid in full. The Arbitrator may not award punitive or special damages.  The award of the arbitration panel will be the sole and exclusive remedy between the parties regarding any and all claims and counterclaims with respect to the subject matter of the dispute and shall be final and binding upon the parties.

7

> Neither party shall be excused from performing its obligations
> hereunder during such arbitration.

(See Dealership Agreement at ¶21, Exhibit "A.")

Clearly, Plaintiffs' claims fall squarely within the scope of this arbitration clause. Moreover, the arbitration agreement is valid and binding on Plaintiffs.

Similarly, Courts have held that an arbitration clause will be enforced even if the contract is unsigned so long as the parties mutually rely upon the terms of the unsigned contract. See *Okcuoglu v. Hess, Grant, & Co.*, 580 F.Supp. 749 (USDC E.D.Pa. 1984).

In the *Okcuoglu* case, Mr. Okcuoglu signed a Standard Pershing Customer Agreement with Hess Grant wherein he recognized Pershing as broker for the sale and purchase of securities. *Id.* The Customer Agreement contained an arbitration clause. *Id.* Although the Agreement was not signed by Pershing's representatives, unquestionably, by their conduct all parties adopted the terms thereof governing the relationships. *Id.* For over five (5) years, each operated under it in complete mutual reliance and with confidence that the terms were fully enforceable. *Id.* Although the customer agreement was not signed by representatives of the broker, because of the parties' conduct in operating in mutual reliance on the agreement over a period of five years, the agreement was deemed adopted, and the arbitration clause was enforced. *Id.* Judge Giles held that the "broker was bound by the arbitration agreement even though it had not signed the agreement." *Id.*

Further, a party's agreement to arbitrate is determined on the basis of ordinary contract principles. A valid arbitration provision must be in writing, however a party may be bound by that provision without having signed an exemplar. See *Fox v. Merrill Lynch & Co., Inc.*, 453

F.Supp. 561, 564 (S.D.N.Y.1978). See also *First Citizens Municipal Corp. v. Pershing Division of Donaldson, Lufkin & Jenrette Securities Corp.*, 546 F.Supp. 884 (N.D.Ga.1982).

Based on the foregoing, Plaintiffs' causes of action against Defendants must be submitted to arbitration. As a result, and in accordance with FRCP 12(b)(6), this Court should grant Defendants' Motion to Dismiss and compel arbitration in this matter.

**B.      Irrespective of the arbitration clause, all counts must still be dismissed.**

All misrepresentation/fraud based counts, which are in the nature of fraud in the inducement, must be dismissed due to integration clause. Likewise, the contract count must be dismissed since it nowhere includes a promise that Superior would manufacture the tub.

Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties, the law is clearly and well settled that the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence. *Knez Optical v. Singer Optical Group*, 1995 U.S. Dist. LEXIS 16319 (USDC ED Pa. 1995). In *Knez Optica*, the Court held that oral misrepresentations made before the execution of a franchise agreement that contained an integration clause were not admissible and the company's RICO claims, which were based on the oral statements, were dismissed. Id.

In *Knez Optica*, the optical company, like Plaintiffs in this case, brought an action against defendants based on the parties' franchise agreement, claiming among other things that defendants made fraudulent misrepresentations. Id.  Defendants filed a motion to dismiss the complaint, which alleged violations of RICO, 18 U.S.C.S. § 1962(c), (d), as well as breach of

9

contract, breach of the duty of good faith and fair dealing, fraudulent misrepresentation, and common law conspiracy to defraud. Id. The court granted the motion, concluding that the oral statements on which the optical company based its complaint were barred by the parole evidence rule. Id. The franchise agreement, which was signed by both sides, contained an integration clause and the court refused to consider statements made prior to the execution of the agreement. Id. Because the RICO allegations under 18 U.S.C.S. § 1962(c) were based on the inadmissible oral statements, they were dismissed. Id.

Here, the Dealership Agreement entered into by both parties contained two sections dealing with an integration clause. Based on the clear and unambiguous language of the integration clauses, all misrepresentation/fraud based counts, which are in the nature of fraud in the inducement, should be dismissed:

### 26. Miscellaneous

This Agreement and any attachments hereto constitute the entire Agreement of the parties regarding the subject matter herein, and supersedes any prior understanding or agreements between them regarding its subject matter. In the event of a conflict between the terms of this Agreement and the terms of an Attachment, the terms of this Agreement shall control.

(See Dealership Agreement at ¶26, Exhibit "A.")

### 27. Entire Agreement

This Agreement represents the entire understanding of the parties of the subject matter herein. No modification or change of terms of this Agreement shall bind either party unless in writing signed by both parties.

(See Dealership Agreement at ¶27, Exhibit "A.")

10

Clearly, under the integration clauses, any such promises or statements made by Joseph Scott that are not embodied in the Dealership Agreement cannot be considered as part of this action. The only alleged misrepresentation is the one made during negotiations that Superior manufactured the tubs. Likewise, the integration clause bars contract claims involving representations during negotiations. Thus, all counts must be dismissed.

### C.     Alternatively, the Non-Contractual Common Law Counts Must Be Dismissed Under the Gist of the Action Doctrine.

If not dismissed for the Arbitration Clause or the Integration Clause, Counts I (Negligent Misrepresentation), II (Fraudulent Misrepresentation), IV (Fraud) must be dismissed under the gist of the action doctrine. The gist of the action doctrine was recently described in *Reardon v. Allegheny College*, 2007 Pa. Super. 160, 926 A. 2d 477, 486-487 (2007):

> The gist of the action doctrine acts to foreclose tort claims: 1) arising solely from the contractual relationship between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim. *Hart v. Arnold,* 884 A.2d 316, 340 (Pa.Super.2005), *citing eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 19 (Pa.Super.2002). The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of "breaches of duties imposed by mutual consensus agreements between particular individuals," while the latter arises out of "breaches of duties imposed by law as a matter of social policy." *Hart* at 339, *quoting Pittsburgh Constr. Co. v. Griffith,* 834 A.2d 572, 581-582 (Pa.Super.2003), *allocatur denied* 578 Pa. 701, 852 A.2d 313 (2004).

*Gaffer Insurance Co., Ltd. v. Discovery Reinsurance Co.*, 2007 WL 2972580 (M.D. Pa. 2007).

Plaintiffs claim that the alleged wrong committed was a breach of the contract - - a failure to deliver a tub for which Superior was the actual manufacturer. As a breach of contract, this claim would bar the tort-based claim.

To the extent Plaintiffs wish to change/revise the alleged misrepresentation that Superior manufactured the tub as fraud in the inducement of this not affected by the gist of the action doctrine this fraud claim would be barred by the integration clause. Also, the identity of the company that actively makes the tubs is international, and as such "fraud" can be dismissed on that basis.

**D.      The breach of contract count must be dismissed.**

There is no contract term that Superior itself manufacture the tubs. Even if this was a contract term, it would not be material. Furthermore, the contract is by and between Superior and Rafael Morales, thus any claim by Mila Morales should be dismissed.

The elements necessary to plead a cause of action for breach of contract are 1) the existence of a contract, including its essential terms, 2) a breach of a duty imposed by the contract, and 3) resultant damages. *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 2002 Pa. Super. 39, 792 A. 2d 1269 (2002). The failure to plead the essential terms of the contract - or any one of the elements B will result in dismissal of the claim. *Udujih v. City of Philadelphia,*___ F. Supp. 2d ___, 2007 WL 1437474 (E. D. Pa. 2007) at *5 (Dismissal for failure to plead essential term results in dismissal.); *Naples v. Bedrock Management, Inc.*, 2005 WL 673011 (E. D. Pa. 2005) (Same.)

The contract is void of any term that would remotely require Superior to manufacture its own tub. The First Amended Complaint specifically alleges that "Plaintiff refused delivery of a

12

bathtub that was not a Superior product as it did not comply with the terms of the Agreement."

This averment is fatally flawed because no such term exists in the contract. Moreover, the

contract is between Superior and Rafael Morales, thus any such claim by Mila Morales should be

dismissed.

### E.      Plaintiffs fail to state a RICO claim.

Notice pleading does not require guesswork. Fed. R. Civ. P. 8(a). Since RICO claims

have been dismissed for deficiently pleading an element of a specific subsection of 1962

(*Dongelewicz v. PNC Bank Nat'l. Ass'n.*, 104 Fed.Appx. 811, (2004)), (Claim under 1962(c)

dismissed for failure to plead that defendant conducted the affairs of an enterprise), the failure to

make even the initial step of pleading which of the four sections the Defendants allegedly

violated is ground for dismissal. Thus, the RICO claim (Count V) is deficient for failing to

identify which of the four RICO violations apply and for failing to allege a pattern of conduct.

The statute reads:

### 1962.  Prohibited activities

(a) It shall be unlawful for any person who has received any
income derived, directly or indirectly, from a pattern of
racketeering activity or through collection of an unlawful debt in
which such person has participated as a principal within the
meaning of section 2, title 18, United States Code, to use or invest,
directly or indirectly, any part of such income, or the proceeds of
such income, in acquisition of any interest in, or the establishment
or operation of, any enterprise which is engaged in, or the activities
of which affect, interstate or foreign commerce. A purchase of
securities on the open market for purposes of investment, and
without the intention of controlling or participating in the control
of the issuer, or of assisting another to do so, shall not be unlawful
under this subsection if the securities of the issuer held by the
purchaser, the members of his immediate family, and his or their
accomplices in any pattern or racketeering activity or the collection

13

of an unlawful debt after such purchase do not amount in the aggregate to one percent of the outstanding securities of any one class, and do not confer, either in law or in fact, the power to elect one or more directors of the issuer.

**(b)** It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

**(c)** It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

**(d)** It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Even if Plaintiffs took the first step of identifying which of four RICO violations applied (which they did not and such a failure in and of itself requires dismissal of this Count), they failed to allege a "pattern of racketeering activity," which is explicitly required. Thus, the RICO claim (Count V) is also deficient for failing to allege a pattern of conduct. The "racketeering activity" piece of the phrase is defined by <u>18 U.S.C. 1961(1)</u>. The flaw connected to Aa pattern of "racketeering activity" is the failure to allege a pattern. To plead a pattern, one must aver not only that each defendant committed at least two acts of prohibited racketeering activity but also that the predicate acts are related and that they amount to, or pose a threat of continued, criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). AA short term scheme threatening no future criminal activity will not suffice." *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1412 (3d Cir.1991). Where the allegations of the complaint, taken as true, do not support the existence of either long-term

14

criminal conduct or the threat thereof, dismissal is appropriate.  *Marshall-Silver Constr. Co. v. Mendel*, 894 F.2d 593, 598 (3d Cir.1990).  On this basis, as well, the RICO count should be dismissed.

**F.      The Unfair Trade Practices Act Claim Must Be Dismissed.**

The Unfair Trade Practices Claim (Count VI) must be dismissed because the transaction under which Raphael Morales was to become a dealer was not a consumer transaction.  73 P.S. § 201-9.2 (a) permits a private right of action only where a defendant engaged in an unlawful act in connection with a consumer transaction:

> Any person who purchases or leases goods or services **primarily for personal, family or household purposes** and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100), whichever is greater. [Emphasis supplied.]

*Balserston v. Medtronic Sofamor Danek, Inc.*, 285 F. 3d 248 (3rd Cir. 2002) (Plaintiff failed to state a claim under Unfair Trade Practices Act where plaintiff was orthopedic surgeon purchasing pedicle screws for use in spinal surgery since item was not primarily for personal, family, or household use.); *Pennsylvania Medical Society Liability Insurance Co., v. Medical Professional Liability Catastrophe Loss Fund*, 804 A. 2d 1267, 1272 (Pa. Cmwlth 2002), rev=d on other grounds, 577 Pa. 87, 842 A. 2d 379 (2004) (Because insurance company services and CAT Fund coverage is of a commercial nature and not intended to serve personal, family, or household purposes, plaintiff failed to state a claim.)  Since the relationship between the parties, defined and governed by the Agreement, concerned a commercial transaction unrelated to personal, family, or household purposes, the Unfair Trade Practices Act is inapplicable.  It does not matter that the

15

Morales believe that there was a promise for a bathtub manufactured by Superior, since any such

promise, under the terms of the First Amended Complaint itself, was part of the commercial

transaction.   This was not a consumer purchase of a bathtub.   Rather, the purpose of the

transaction was to establish a dealership relationship.   The Unfair Trade Practices Count must

therefore be dismissed.

### G.   The Loss of Consortium Claim Must Be Dismissed.

It is unclear how a failure to consummate a dealership agreement could have any

relationship to a loss of consortium claim.   A claim for loss of consortium arises only from one

spouse's physical injury, and is a claim on behalf of the other spouse for the effects of the injury

on the marital relationship.   As the Pennsylvania Supreme Court stated in *Darr Construction Co.*

*v. Workmen's Compensation Appeal Board*, 552 Pa. 400, 408, 715 A. 2d 1075, 1080 (1998):

> It is well-settled that the claim is derivative, emerging from the
> impact of one spouse's physical injuries upon the other spouse's
> marital privileges and amenities. *Kowal v. Commonwealth,*
> *Department of Transportation,* 100 Pa.Cmwlth. 593, 515 A.2d
> 116, 119 (1986)

There is no physical injury in this commercial case.   Even if there were, nothing that

occurred herein is alleged to have impacted the marital relationship.   The loss of consortium

claim must therefore be dismissed.

### H.   The Punitive Damage Claim Must Be Dismissed.

Plaintiffs have not pled conduct that would merit punitive damages.   Punitive damages

are penal in nature and are proper only in cases where the defendant's actions are so outrageous

as to demonstrate willful, wanton or reckless conduct.   *Snead v. Society for the Prevention of*

*Cruelty to Animals of Pennsylvania*, 2007 Pa. Super. 204, 929 A. 2d 1169.   The failure to act,

16

must be intentional, reckless or malicious. *Id.* To obtain punitive damages, a plaintiff must establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed, and that (2) he acted, or failed to act, as the case may be, in conscious disregard of that risk. *Id.* The First Amended Complaint lacks even the hint of any fact that would meet such a standard, and thus, even if a tort claim were to survive, the claim for punitive damages must be dismissed. Furthermore, the parties mutually agreed that in the event of a dispute, they would arbitrate. Moreover, the parties agreed that in any arbitration, the arbitrator may not award punitive damages. (See Dealership Agreement ¶21.)

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' First Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

s/Scott P. Sigman

By:_____

George Bochetto, Esquire
David J. Perlman, Esquire
Scott P. Sigman, Esquire
1524 Locust Street
Philadelphia, PA 19102
Ph: (215) 735-3900
Fx: (215) 735-2455

*Attorneys for Superior Living Products, LLC and Joseph Scott*

Dated: 11/12/2008

17

## CERTIFICATE OF SERVICE

I, David J. Perlman, Esquire, hereby certify that a true and correct copy of the foregoing

Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint was served upon the

following counsel via ecf and first-class mail:

Matthew B. Weisberg, Esquire
Rebecca M. Steiger, Esquire
PROCHNIAK WEISBERG, P.C.
7 Morton Avenue
Morton, PA 19070
Facsimile: (610) 690-7401

**BOCHETTO & LENTZ, P.C.**

s/Scott P. Sigman

Date: 11/12/2008                  By: _____

Scott P. Sigman, Esquire

18