# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Raphael Morales and Mila Morales : <br> Individually & as h/w : <br> 3505 Vintage Spring Terrace : <br> Onley, MD 20832 : <br>          Plaintiffs : <br>    v. : <br> : <br> Superior Living Products, LLC, et al : <br> 355 Circle of Progress : <br> Pottstown, PA 19464 : <br>          Defendants : | NO.: 2:07-cv-04419 <br><br><br> Jury Trial of Twelve (12) Jurors Demanded |

### PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

Incorporating by reference their attached Memorandum of Law and prior response to Defendants' Motion to Dismiss Plaintiffs' original Complaint (docket No. 9) and Supplement thereto (No. 14), Plaintiffs request this Honorable Court deny Defendants' Motion.

WHEREFORE, Plaintiffs request this Honorable Court deny Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

                                                                   PROCHNIAK WEISBERG, P.C.

                                                                   /s/ Matthew B. Weisberg, Esquire
                                                                   MATTHEW B. WEISBERG, ESQUIRE
                                                                   Attorney for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| Raphael Morales and Mila Morales : <br> Individually & as h/w : <br> 3505 Vintage Spring Terrace : <br> Onley, MD 20832 : <br>         Plaintiffs : <br>     v. : <br> : <br> Superior Living Products, LLC, et al : <br> 355 Circle of Progress : <br> Pottstown, PA 19464 : <br>         Defendants : | NO.: 2:07-cv-04419 <br><br><br> Jury Trial of Twelve (12) Jurors Demanded |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

**I.  Introduction**

Abandoning almost all of its arguments in support of its Motion to Dismiss Plaintiffs' original Complaint, Defendants now file their Motion to Dismiss Plaintiffs' First Amended Complaint for the first time claiming contractual arbitration.

As before, however, Defendants attempt to re-characterize Plaintiffs' Complaint as a mere breach of contract matter requiring the dismissal of all common law tort remedies as well as RICO and Unfair Trade Practices.  As to the breach of contract Count, Defendants claim that should also be dismissed because Defendants' delegated the duty of manufacture to a non-party.

While Plaintiffs will address in further detail, they incorporate their First Amended Complaint (docket No.: 33), which speaks for itself in its entirety, and renew their prior Response (No.: 9) to Defendants' Motion to Dismiss Plaintiffs' original Complaint and Supplemental Response (No.: 14) thereto.

In short, Defendants "miss the boat" entirely as presuming Plaintiffs' First Amended Complaint arising from bathtub manufacture as opposed to what it clearly reads: Defendants' white collar con as evident by Defendants' national repeated pattern of use of their franchise agreement as a ruse to collect franchise purchase money without Defendants' ever intending even to initially perform.

**II.      Operative Facts**

On or about Christmas 2006, Defendants and Plaintiff, Raphael Morales ("Morales"), executed a dealership agreement ("agreement") for the sale of walk-in bathtubs which Morales was to be an affiliated franchisee dealer. To enter into the contract, Morales and his wife, Mila Morales, paid Defendants approximately $20,871.63. To satisfy the contract vis-à-vis enable Morales to profit by being Defendants' franchisee, Defendants agreed to provide Morales an exclusive sales area, training, and provide assistance with marketing and lead generation. Additionally, Defendants were to deliver to Morales a "SUPERIOR" sample tub for his and his wife's personal or household use, or his showroom use.

Leading up to the agreement, franchisor-Defendant, Superior Living Products, LLC ("Superior"), agent-employee, Defendant, Joseph Scott ("Scott"), misrepresented to Morales that Superior manufactured the bathtubs. For the first time in their instant motion (as compared to Defendant's original Motion), Defendants raise a fact issue that Superior sub-contracts manufacture to a non-party. As averred, this disclosure was previously discovered post-controversy by Morales though all the time concealed until now by Defendants.

On or around January 17-18, 2007, Plaintiff along with other Superior agents/dealers attended Superiors' initial training. Thereafter, Morales, through his sales sub-contractor, Kenny Cohen ("Cohen"), began in earnest Morales' franchise's bathtub sales.

Approximately one (1) month after that training, Morales and Cohen gained an opportunity to sell approximately fifty (50) bathtubs to a new customer. Morales needed the promised showcase bathtub to make the sale which he was not yet in receipt though about two (2) months elapsed from the agreement's execution.

Instead of supplying the bathtub to Morales so that Morales could consummate the sale, Scott on behalf of Superior refused instead delaying that bathtub's distribution to Morales until Defendants "learned more" about this large client. Discovery will show Superior's intent was to delay as long as possible because Defendants' never intended to distribute any let alone fifty (50) products.

Defendants' refusal caused Morales concern about Superior's abilities to supply bathtubs for Morales' showcase and sales. Morales inquired as to Superior's seemed inability but Superior refused substantive response on this the crux of the agreement. Instead, Superior much later sent a sub-standard bathtub to Morales from an unrelated distributor[1] which Morales, of course, rejected given Morales not warning to perpetuate Defendants' misconduct vis-à-vis supplying a non-Superior and sub-standard product for his new large client.

In response, Defendants saw an opportunity to perfect their con and termed Morales' rejection of this substitute bathtub an anticipatory breach of the agreement (which Defendants' default not only caused Morales to be in breach to Cohen and unable to consummate this fifty (50) bathtub sale, but also caused Morales' franchise breakdown while Morales and his wife, Mila Morales, lost their purchase money).

If Defendants' breach of the agreement went only to Defendants' manufacture of the bathtubs (as well as to properly train, market and generate leads for Morales, all of which were

---

[1] Notably contrary to Defendants' claim that the agreement does not bar third-party manufacture, the agreement does bar third-party beneficiary status. Defendants' Exh. A, ¶17.

not performed) was the "gist of the action," then Defendants' contention that this controversy is contractual in nature could have support upon a Motion for Summary Judgment, but not at this stage given facts in dispute (such as Defendants' pre-contract intent never to honor its agreement also giving rise to other tort if not statutory causes of action). But, there is more:

On the surface, if breach of the agreement were at issue, Defendants' pleaded intentional behavior of accepting a large purchase amount and then immediately dishonoring requires this Honorable Court to deny Defendants' Motion-there being facts at issue surrounding that intent which would if proven allow Plaintiffs' recovery in tort. However, Plaintiffs' Amended Complaint incorporating (and here incorporating by reference) Plaintiffs' supplement to Plaintiffs' initial response to Defendants' Motion to Dismiss the original Complaint gives further support to Plaintiffs' tort and statutory claims for relief.

On May 21, 2008, Plaintiffs were contacted by a third-party witness ("witness") who had read Plaintiffs' original Complaint's allegations on the internet. The witness advised he was a Superior franchisee-dealer located in another state. The witness advised that he and six (6) or so other dealers located throughout the country in other states had lost their "buy-in" funds to Superior as a result of strikingly similar "bait and switch" tactics by Defendants. The witness advised he was to meet with these other dealers at a mutually convenient location centrally located within the country to discuss their litigation options, including joinder in this action or class action. The witness, however, advised that he and the other franchisees were afraid of Defendants' retaliation.

In all, Plaintiffs, the witness and the other mentioned franchisees gave Superior purchase money for their new franchise only to have Superior refuse to perform at the out-set making sales impossible with Superior converting their large purchase monies.

**III.    Argument**

    A.    Standard

When deciding a Motion to Dismiss under FRCP 12(b)(6), the Court is "required to accept as true all the facts pleaded in the Complaint and to draw all inferences in favor of the Plaintiff." Independent Enterprises, Inc. v. Pittsburgh Water & Sewer Authority, 103 F.3d 1165, 1168 (3d. Cir. 1997). The question at the Motion to Dismiss stage is whether "the facts alleged in the Complaint, even if true, fail to support the… claim…" Ransom v. Marrazzo, 848 F.2d 398, 401 (3d. Cir. 1988).

In ruling on the Motion, the Court may consider the pleadings, "matters of public record, exhibits attached to the Complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384, n. 3 (3d. Cir. 1994).

In Twombly, the United States Supreme Court discussed the Conley standard in adjudicating a Motion to Dismiss. Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955 (2007); Conley v. Gibson, 78 S.Ct. 99 (1957). Previously, Conley identified the standard: "a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, supra. A complex antitrust lawsuit arising from state law, Twombly reconciled but *did not overrule* Conley instead holding that the standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will provide evidence" that the facts set forth in the Complaint will enable Plaintiff a right to relief. Twombly, supra.

**After** Twombly, the United States Supreme Court applied the Conley standard in vacating the Trial Court's dismissal of a Civil Rights Complaint by a prisoner-plaintiff who

averred having suffered harm as a result of the defendant-prison's discontinuance of hepatitis C treatment.  Erickson v. Pardus, 147 S.Ct. 2197 (2007).

In reconciling Twombly and Erickson with Conley, the Third Circuit held that Twombly has *not* altered the pleading standard.  Phillips v. County of Allegheny, 515 F.3d 224 (3d. Cir. 2008).

The Third Circuit has clearly held that Twombly does *not* require "detailed factual allegations," but "only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the Defendant a fair notice of what the claim is and the grounds upon which it rests."  Phillips, supra.  Phillips recognized that the "plausibility" analysis of Twombly is contextual: the more complicated a cause of action (such as antitrust, as in Twombly) the more a Plaintiff must "show" in terms of facts to "nudge" a claim "across the lines from conceivable to plausible".  Phillips, supra.; Twombly, supra.  On the contrary, simplistic even federal causes of action such as Section 1983 (civil rights) or garden variety negligence applies the Conley "no set of facts" analysis.

A Plaintiff should be provided an opportunity to file an Amended Complaint if it appears that the deficiencies can be corrected.  Twombly, supra.; *See,* 2A J. Moore, *Moore's Federal Practice* ¶12.07 [2.-5], P.12-99 (2d ed. 1994); *accord*, In re Spree.com Corp., 2001 WL 1518242 (Bankr. E.D. Pa. 2001).

In our case, Plaintiff alleges violations of federal and state statutes (self-descriptive on their face of the complaint especially when reading these specialized statutes) and common law causes of action including negligence.  Plaintiff claims fraud to be analyzed under FRCP 9 as well as common law causes of action and statutory violation(s) of the Unfair Trade Practices and Consumer Protection Law and RICO to be analyzed under FRCP 8.  Flores v. Shapiro &

Kreisman, 236 F. Supp.2d 427 (E.D.Pa. 2002); Sedima, S.P.R.L v. Imrex Co, Inc., 473 U.S. 479, 105 S.Ct. 3275 (U.S. (N.Y.) 1985);  Tabas v. Tabas, 47 F.3d 1280 (3d Cir. 1995).

Under any standard (Twombly as has been mischaracterized by movant without reference to Erickson or Phillips reconciliations), Plaintiff's Complaint is simple, factually set forth, and, as is self-evident in this climate, plausible.  It is not a complex lawsuit for antitrust violations as in Twombly but more akin to the garden variety negligence and civil rights discussed in Phillips and Erickson.

When applying the correct standard, Plaintiff's Complaint is sufficiently specific and Defendant's Motion should be denied.  In the alternative, Plaintiff should be granted leave to amend as this Honorable Court is, respectfully, directed to allow.

  B.  <u>Arbitration Agreement</u>

At the outset, Defendants have waived their claim for contractual arbitration by litigating this matter instead of a Motion to Compel Arbitration and Stay immediately upon their entry of appearance.

Waiver of arbitrability is a "gateway" issue for the court to decide.  Volpe v. Jetro Holdings, Civ.A.No. 08-3521, 2008 U.S. Dist. LEXIS 93404 (E.D.Pa. 2008).   "An agreement to arbitrate is waived by any action of a party which is inconsistent with the right of arbitration." Id. (quoting Northwestern Nat. Life Ins. Co. v. U.S. Healthcare, Inc., Civ.A.No. 96-4659, 1998 U.S. Dist. LEXIS 6955, 1998 WL 252353, at *14 (E.D. Pa. May 11, 1998)).

"Although prejudice remains the ultimate 'touchstone' in determining waiver," the court must consider several other factors when analyzing a waiver claim, including: "(1) the degree to which the party seeking to compel arbitration has contested the merits of his opponent's claims; (2) whether that party has informed its adversary of the intention to seek arbitration even if it has

not yet filed a motion to stay the district court proceedings; (3) the extent of its non-merits motion practice; (4) the moving party's assent to the district court's pretrial orders; and (5) the extent of the discovery." Id. (citing Paine Webber, Inc. v. Faragalli, 61 F.3d 1063, 1069, n.4 (3d Cir. 1995)).

On November 29, 2007, Defendants filed their Motion to Dismiss (No.: 2) Plaintiffs' original Complaint. On February 5, 2008, parties submitted to telephonic settlement conference (No.: 10). On April 4, 2008, parties submitted to another telephonic settlement conference (No.: 12). On July 16, 2008, an in-person settlement conference was held (No.: 18). On September 10, 2008, the Court entered an order granting the Motion to Dismiss with leave to file an Amended Complaint (No.: 19). On October 3, 2008, Defendants opposed Plaintiffs' motion for extension of time to file an Amended Complaint (No.: 22). On October 10, 2008, Defendants filed yet another Motion to Dismiss the original Complaint (No.: 24). On October 13, 2008, Defendants opposition Plaintiffs' Motion for extension of time to file their First Amended Complaint (No.: 27).

If Defendants had filed a Motion to Compel Arbitration at the outset, all filings thereafter could have been avoided (this issue is unable to be mooted by an Amended Complaint) and otherwise forced to be confronted directly, early via the involuntary stay. Because Defendants filed two (2) separate Motions to Dismiss the original Complaint and then numerous, unnecessary oppositions to enlargements of time, Plaintiffs were forced to aggressively litigate and this Honorable Court adjudicate all contrary to the express purpose of contractual arbitration to Plaintiffs' prejudice vis-à-vis time delay, unnecessary litigation and litigation's attendant cost.

Because Defendants failed and, in fact, still fail to move this Honorable Court to compel arbitration and stay via a separate Motion instead Defendants' having chosen and still choosing

to litigate each and every issue that has arisen for over the past one (1) year, Defendants waive their right to invoke arbitration at this late stage.

As to the arbitration provision itself, it is invalid for (1) requiring a claimant proceed through some non-specific form of pre-claim dispute process through respondent's internal officers; then (2) requiring initiation of arbitration in a jurisdiction unrelated to the situs of the cause of action; (3) for failure to identify with specificity that this claim is to be submitted to arbitration; and (4) at arbitration, precluding punitive and "special" damages.

The arbitration's requirement of pre-arbitration internal dispute resolution delaying arbitration creates a contractual impediment to arbitration via the requirement of exhaustion of futile remedies, and, in-fact, creates a non-binding arbitration to precede a binding arbitration all of no affect except to create a stumbling block to Plaintiffs' right to contest rendering the arbitration provision void. *See generally,* Shook of West Virginia, Inc. v. York City Sewer Authority, 756 F.Supp. 848 (M.D.PA. 1991).

As to the situs of the arbitration (Philadelphia, Montgomery or Bucks counties), the arbitration provision unconscionably attempts to contractually create jurisdiction and venue in a foreign location to Plaintiffs but not Defendants despite this action arising in Maryland rendering the provision additionally invalid as unconscionable. Ostroff v. Alterra Healthcare Corp., F.Supp.2d 538, 544 (E.D.Pa. 2006). Otherwise, the arbitration clause is substantively unconscionable as prohibiting remedies including punitive damages and "special" (undefined-see below) damages which are required by statute and which exemplary relief is franchisee beneficial in nature. Id. (citing Morrison v. Circuit City Stores, Inc., 317 F.3d 646, 670-71 (6th Cir. 2003)). The undefined "special[2]" damages prohibition also renders the clause void for

---

[2] "Special damages" also colloquially known as "specials" is a legal term of art generally meaning monetarily calculable loss (i.e., wage loss, liens, medical bills, etc.).

vagueness. Euro-Mec Import, Inc. v. Pantrem & C.S.P.A., Civ.A.No. 92-2624, 1992 U.S. Dist. LEXIS 18046, *12 (E.D.Pa. 1992).

Additionally, Plaintiffs' Complaint falls outside the scope of the arbitration provision as unrelated to the agreement at issue. The agreement, though executed, was never effected as Defendants never even began to distribute. Plaintiffs claim a national conspiracy by Defendants' converting franchisees' money with no intent to begin to perform under the agreement and thus the agreement and its arbitration provision is merely illusory and a device to affect a fraud. Ostroff, at 542 (state law claims of a fraudulent and illusory contract are defenses to arbitration provisions otherwise interpreted by federal law). This claim is outside the scope of the agreement as the agreement does not even liberally envision the failure of initial performance by Superior and, as stated, the agreement is merely a tool for common theft.

C. Integration Clause

Defendants invoke the integration clause but fail to explain as to its affect on this action except to say that nowhere therein does it state that Defendants were to manufacture. While the contrary is true (i.e., the agreement repeatedly references[3] "SUPERIOR'S Products"[4] [sic]), the admissibility of Defendants' oral promise and Superior's failure to manufacture is, if nothing else, evidence of Defendants' pre-meditated intent to convert. The integration clause in no way speaks to Plaintiffs' claim of Defendants' national effort retrieve funds from unwary first-time franchisees never intending to perform in any respect.

It is Defendants' intentional refusal to participate as a franchisor-distributor in any respect except to late deliver a sub-standard product which was unsellable to a potential large

---

[3] And even provides a limited warranty. (Defendants' Exh. A, ¶13).
[4] Defendants' Exh. A, *passim.*

client (perhaps in an effort to avoid liability) and then doing similar artifices repeatedly, nationally which is the crux.

Separately, Defendants' argument of the affect of the integration clause on this action is unexplained (and thus waived[5]) and of no moment.

### D. Gist of the Action, Economic Loss Doctrine

As before with the integration clause argument, Plaintiffs object to the characterization of its action as merely a breach of contract. All actions Plaintiffs' can imagine that arise from a commercial fraud and RICO context originate at some point from a contract but that does not cause a court to eliminate those actions' extra-contractual counts.

Under Bilt-Rite, the Pennsylvania Supreme Court clarified that the long outdated distinction between law and equity is abolished as it relates to first-party relationships such as herein (i.e., broker-dealer). Bilt-Rite Contractors, Inc. v. The Architectural Studio, 581 Pa. 454, 866 A.2d 270 (2005).

In the event this Honorable Court holds Bilt-Rite inapplicable, that holding does not divest (as admitted by Defendants' in their initial Motion to Dismiss[6]) neither Plaintiffs 'statutory causes of action nor Plaintiffs' claim(s) of fraud. If accepting Movants' Gist of the Action argument as applicable, the Court would be paradoxically required to strike Plaintiffs' tort claim of negligence in favor of protecting Plaintiffs' remaining tort claims – an outcome further blurring law and equity for which the doctrine has been abolished.

### E. Breach of Contract

Attempting to parse First Amended Complaint instead of reading it in whole as required,

---

[5] Sports Racing Servs., Inc. v. Sports Car Club of Am., Inc., 131 F.3d 874, 880, n. 9 (10th Cir.1997) (holding that party who noted issue and made "several broad, conclusory statements" waived argument for failure to develop); Enplanar, Inc. v. Marsh, 11 F.3d 1284, 1287, n. 16 (5th Cir.1994) ("They cite no authority for th[eir] theory, and we will not root about in the case law seeking support for it").
[6] Docket No. 2, f-note 7.

Defendants, again, base their defense on their claimed inadmissible parole promise to manufacture.

While the aforesaid averment in Plaintiffs' First Amended Complaint requires factual analysis (such as the elements rendering parole evidence admissible) outside of 12(b)(6) analysis availability, the agreement is for distribution which the Complaint clearly avers Defendants' failings.

    E.    <u>RICO</u>

A Plaintiff need not plead any causes of action[7] (merely facts with request for relief) or any facts when the cited statute is self-descriptive[8]. Defendants' state but do not support their contention that Plaintiffs' First Amended Complaint is insufficient for want of specificity.

As discussed before in response to Defendants' original motion as well as in applying the above 12(b)(6) standard, RICO does not require heightened specificity which, in any event, is provided. <u>Sedima</u>, supra.; <u>Tabas</u>, supra.

    F.    <u>Unfair Trade Practices and Consumer Protection Law ("UTPCPL")</u>

Plaintiffs plead initial bathtub delivery for personal and household use, as well as could be used for showcase commercially.

Plaintiffs' claim under the UTPCPL should survive.

    G.    <u>Loss of Consortium</u>

Mila Morales' loss of consortium claim should survive as being derivative of each tort (whether statutory or common law) cause of action.

---

[7] <u>Krajewski v. Am. Honda Fin. Corp.</u>, 557 F.Supp.2d 596 (E.D.Pa. 2008) (motion for summary judgment denied even though argued cause of action not separately pleaded-the complaint should be read liberally to allow because a complaint need not plead a legal theory of recovery, just facts and request for relief).
[8] <u>French v. Wells Fargo</u>, Civ.A.No. 08-3030 (E.D.Pa. 2008) (motion to dismiss denied when the factual basis is found within the cited statute itself).

To contend financial warfare not causing antecedent emotional distress upon Morales and thus his wife's loss vis-à-vis consortium is disingenuous as well as requiring factual development inapplicable at this stage.

H.  Punitive Damages

Plaintiffs' Complaint avers conduct supporting an award of punitive damages when proven at trial.

Well-pleaded, a further inquiry is not allowed at this stage.

**IV.  Conclusion**

WHEREFORE, Plaintiffs request this Honorable Court deny Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint.

PROCHNIAK WEISBERG, P.C.

/s/ Matthew B. Weisberg, Esquire
MATTHEW B. WEISBERG, ESQUIRE
Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Raphael Morales and Mila Morales : <br> Individually & as h/w : <br> 3505 Vintage Spring Terrace : <br> Onley, MD 20832 : <br>     Plaintiffs : <br>   v. : <br> : <br> Superior Living Products, LLC, et al : <br> 355 Circle of Progress : <br> Pottstown, PA 19464 : <br>     Defendants : | NO.: 2:07-cv-04419 <br><br><br> Jury Trial of Twelve (12) Jurors Demanded |

### **ORDER**

AND NOW this _____ day _____, 2008, upon consideration of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, and Plaintiffs' response thereto, it is hereby ORDERED and DECREED that Defendants' Motion to Dismiss is denied.

**AND IT IS SO ORDERED**

                                              _____
                                              JAMES KNOLL GARDNER    , J

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Raphael Morales and Mila Morales : <br> Individually & as h/w : <br> 3505 Vintage Spring Terrace : <br> Onley, MD 20832 : <br>          Plaintiffs : <br>     v. : <br> : <br> Superior Living Products, LLC, et al : <br> 355 Circle of Progress : <br> Pottstown, PA 19464 : <br>          Defendants : | NO.: **2:07-cv-04419** <br><br><br> Jury Trial of Twelve (12) Jurors Demanded |

### **CERTIFICATE OF SERVICE**

    I, Matthew B. Weisberg, hereby certify that on this 1st day of December, 2008, a true and correct copy Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint, and Plaintiffs' response thereto, was served via electronic filing upon the following parties:

Bochetto & Lentz, P.C.
David J. Perlman
1524 Locust Street
Philadelphia, PA 19102


                                    PROCHNIAK WEISBERG, P.C.

                                    BY:    /s/ Matthew B. Weisberg
                                                   MATTHEW B. WEISBERG
                                                   Attorneys for Plaintiffs