IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RAPHAEL MORALES and                )
MILA MORALES, Individually         )   Civil Action
  and as Husband and Wife,         )   No. 07-cv-04419
                                   )
            Plaintiffs             )
                                   )
         vs.                       )
                                   )
SUPERIOR LIVING PRODUCTS, LLC;     )
JOSEPH SCOTT, doing business as    )
  Superior Living Products, LLC,   )
                                   )
            Defendants             )

                    *    *    *

APPEARANCES:

          SCOTT P. SIGMAN, ESQUIRE
          On behalf of Defendants

          MATTHEW B. WEISBERG, ESQUIRE
          On behalf of Plaintiffs

                    *    *    *

                O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on Defendants' Motion

to Dismiss Plaintiffs' First Amended Complaint, which motion was

filed November 12, 2008.  Plaintiffs' Response to Defendants'

Motion to Dismiss Plaintiffs' First Amended Complaint was filed

December 1, 2008.  For the following reasons, I grant

defendants' motion and dismiss the First Amended Complaint.

JURISDICTION

Jurisdiction in this case is based upon diversity of citizenship pursuant to 28 U.S.C. § 1332 and federal question jurisdiction pursuant to 28 U.S.C. § 1331.  The court has supplemental jurisdiction over plaintiffs' pendent state law claims.  See 28 U.S.C. § 1367.

VENUE

Venue is proper pursuant to 28 U.S.C. § 1391(b) because defendant Superior Living Products, LLC maintains its principal place of business in Pottstown, Montgomery County, Pennsylvania, and defendant Joseph Scott resides in Boyertown, Berks County, Pennsylvania, both of which are located within this judicial district.[1]

---

[1]     Plaintiffs' First Amended Civil Action Complaint alleges that "Venue lies in this district in that the events giving rise to this claim occurred here, at least one (1) Defendant resides, maintains a principle [sic] place of business, and/or does business here, and/or the property and/or mortgage which is the subject of this action is situated within this district." (Amended Complaint, paragraph 2.)

In averring that the events giving rise to this claim occurred "here", plaintiffs presumably mean that those events occurred within this judicial district.  However, based on the facts alleged by plaintiffs, it is unclear whether the relevant events actually occurred within this district. The factual averments contained in the Amended Complaint do not specify where any events occurred.  Moreover, as part of their argument in opposition to the within motion, plaintiffs contend that "this action aris[es] in Maryland".  (Plaintiffs' response, page 10.)

Because jurisdiction is not founded solely on diversity of citizenship, venue here is nevertheless proper because both defendants reside within this judicial district.  See 28 U.S.C. § 1391(b).  Accordingly, the ambiguity regarding where the pertinent events occurred does not render venue in this court improper.

PROCEDURAL HISTORY

Plaintiffs initiated this breach of contract action on October 22, 2007 by filing a nine-count Civil Action Complaint ("Complaint").  The dispute arises from a Dealership Agreement between the parties by which plaintiff Raphael Morales was to be an affiliated agent or dealer of walk-in bathtubs.  Plaintiffs aver that defendants fraudulently induced Mr. Morales to enter the agreement by promising to deliver to him a bathtub for his personal, household or showroom use, but failed to deliver the bathtub.

The original Complaint alleged eight substantive causes of action: (I) negligent misrepresentation, (II) fraudulent misrepresentation, (III) breach of contract, (IV) fraud, (V) civil RICO, (VI) violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), (VII) loss of consortium, and (VIII) punitive damages. Plaintiffs pled their prayer for relief as Count IX.

On November 29, 2007, defendants moved to dismiss plaintiffs' Complaint.  By Order dated September 10, 2008, I concluded that in order to properly review plaintiffs' allegations under the standard of review for a motion brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, plaintiffs needed to amend their complaint to clarify numerous

factual issues.  Specifically, I noted that the Complaint was ambiguous as to which plaintiff executed the agreement at issue and did not include the terms of the agreement, and that the contract itself was not attached to the Complaint.

Moreover, I noted that plaintiffs had not pled their fraudulent misrepresentation, fraud, and UTPCPL claims with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure, and that a more definite statement of the alleged RICO claim and predicate acts were required.

Therefore, I directed plaintiffs to plead their factual allegations with more specificity, and I dismissed defendants' motion to dismiss without prejudice to re-file it, if appropriate, after the filing of an amended complaint.

On October 27, 2008, plaintiffs filed their First Amended Civil Action Complaint ("Amended Complaint").  The Amended Complaint alleges seven causes of action: (I) negligent misrepresentation, (II) fraudulent misrepresentation, (III) breach of contract, (IV) fraud, (V) civil RICO, (VI) violations of the UTPCPL, and (VII) loss of consortium.

On November 12, 2008, defendants filed the within motion to dismiss.  Plaintiffs responded in opposition to the motion on December 1, 2008.  Hence this Opinion.

STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

Ordinarily, a court's review of a motion to dismiss is limited to the contents of the complaint, including any attached exhibits.  See Kulwicki v. Dawson, 969 F.2d 1454, 1462 (3d Cir. 1992).  However, evidence beyond a complaint which the court may consider in deciding a 12(b)(6) motion to dismiss includes public records (including court files, orders, records and letters of official actions or decisions of government agencies and administrative bodies), documents essential to plaintiff's claim which are attached to defendant's motion, and items appearing in the record of the case.  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 nn.1-2 (3d Cir. 1995).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2).  That rule requires only "a short and plain

statement of the claim showing that the pleader is entitled to relief" in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  <u>Twombly</u>, 550 U.S. at 555, 127 S.Ct. at 1964, 167 L.Ed.2d at 940.

Additionally, in determining the sufficiency of a complaint, the court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom in the light most favorable to the non-moving party.  <u>Worldcom, Inc. v. Graphnet, Inc.</u>, 343 F.3d 651, 653 (3d Cir. 2003).  Nevertheless, a court need not credit "bald assertions" or "legal conclusions" when deciding a motion to dismiss.  <u>In re Burlington Coat Factory Securities Litigation</u>, 114 F.3d 1410, 1429-1430 (3d Cir. 1997).

In considering whether the complaint survives a motion to dismiss, both the District Court and the Court of Appeals review whether it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under <u>some</u> viable legal theory."  <u>Twombly</u>, 550 U.S. at 562, 127 S.Ct. at 1969, 167 L.Ed.2d at 945 (quoting <u>Car Carriers, Inc. v. Ford Motor Company</u>, 745 F.2d 1101, 1106 (7th Cir. 1984)) (emphasis in original); <u>Haspel v. State Farm Mutual Auto Insurance Company</u>, 241 Fed.Appx. 837, 839 (3d Cir. 2007).

FACTS

        Based upon the averments in plaintiff's First Amended
Complaint, which I must accept as true under the foregoing
standard of review, the pertinent facts are as follows.

        On or about December 25, 2006, defendants and plaintiff
Raphael Morales ("Mr. Morales") executed a Dealership Agreement
for the sale of walk-in bathtubs by which Mr. Morales was to be
an affiliated agent or dealer.  Plaintiff paid defendants
approximately $20,871.63.  Defendant Superior Living Products,
LLC was to provide him with an exclusive marketing area, train
him, and provide assistance with marketing and leads.

        Additionally, defendants were to deliver to
Mr. Morales a bathtub for his personal, household or showroom
use.  During the negotiation of the agreement, defendant Joseph
Scott represented to plaintiff that defendant Superior
manufactured the bathtubs.  Plaintiff later determined that
Superior did not manufacture the bathtubs, but rather bought
them from other distributors.

        In January 2007, plaintiff attended a training session
with four or five other Superior-affiliated agent/dealers.
After the training, plaintiff began to follow leads in an effort
to sell bathtubs, and began an association with Kenny Cohen, who
acted as a subcontractor.  Within a month after the training

- 7 -

session, plaintiff and Mr. Cohen found a business opportunity

with the possibility of selling fifty bathtubs.

       To proceed with this business opportunity, plaintiff

needed the sample bathtub provided for in the Dealership

Agreement.   Plaintiff demanded that defendants deliver the

bathtub.   Superior sent a bathtub from a different distributor,

and Mr. Cohen was contacted regarding the delivery of this

bathtub.[2]  Plaintiff refused delivery of the bathtub, which

plaintiff characterizes as "not a Superior product", because it

did not comply with the terms of the Dealership Agreement.

Defendants then accused plaintiff of an anticipatory breach of

contract and refused to perform under the Dealership Agreement,

causing harm and damages to plaintiff.

CONTENTIONS

Defendants' Contentions

       Defendants contend that the Amended Complaint should

be dismissed in its entirety because the Dealership Agreement

contains a mandatory arbitration provision.   Specifically,

defendants aver that the arbitration provision requires that

"[I]f the parties are unable to resolve any dispute, controversy

or claim arising under this Agreement (each a Dispute), such

Dispute will be submitted to the Vice President (or higher) of

---

[2]     Amended Complaint, paragraph 22.  The Amended Complaint does not
specify who contacted Mr. Cohen.

each of the Parties for Resolution.  If such officers are unable

to resolve the Dispute within 10 days after submission to them,

the dispute shall be solely and finally settled by arbitration

in accordance with the Arbitration Rules of the American

Arbitration Association".  Defendants argue that this dispute

falls within the scope of the arbitration provision, and

therefore should be dismissed and submitted to arbitration.

In the alternative, defendants contend that all counts

of the Amended Complaint should be dismissed.  First, defendants

aver that all of plaintiffs' misrepresentation, fraud-based, and

breach of contract counts should be dismissed because the

Dealership Agreement includes an integration clause.

Specifically, defendants contend that the Dealership Agreement

does not promise that Superior would manufacture the bathtubs,

and that to the extent any oral promises were made in the course

of negotiations, such promises are not part of the Dealership

Agreement.  Moreover, defendants contend that the integration

clause specifically bars contract claims involving

representations during negotiations.

Second, defendants aver that Counts I (negligent

misrepresentation), II (fraudulent misrepresentation) and IV

(fraud) should be dismissed under the gist-of-the-action

doctrine, which bars tort-based claims brought in a breach contract action.

Third, defendants contend that the Amended Complaint fails to state a RICO claim because Count V fails to identify which of the four statutory RICO violations apply, and fails to allege a pattern of racketeering activity as defined by 18 U.S.C. § 1961(1).

Fourth, defendants argue that plaintiffs' UTPCPL claim, Count VI, should be dismissed because the UTPCPL permits a private right of action only where a defendant is engaged in an unlawful act in connection with a consumer transaction. Defendants aver that the transaction under which Mr. Morales was to become a dealer was a commercial transaction, the purpose of which was to establish a dealership agreement, and was unrelated to personal, family or household purposes. Therefore, defendants contend that the UTPCPL is inapplicable to the transaction.

Fifth, defendants contend that Mrs. Morales' loss of consortium claim should be dismissed because a claim for loss of consortium can arise only from a spouse's physical injury, which has not been pled in this case.  Moreover, defendants aver that even if there were a physical injury alleged in this commercial contract case, plaintiffs have not alleged any impact on the

marital relationship.   Therefore, defendants argue that the loss
of consortium claim (Count VII) should be dismissed.

Finally, defendants contend that plaintiffs' claim for
punitive damages should be dismissed because the facts alleged
in this action do not rise to the level of willful, wanton or
reckless conduct, and because the parties' arbitration agreement
provides that punitive damages are not available.

### Plaintiffs' Contentions

Regarding the arbitration provision, plaintiffs
contend that defendants have waived their claim for contractual
arbitration by litigating this matter, rather than filing a
motion to compel arbitration immediately upon entering an
appearance in this matter.   Specifically, plaintiffs aver that
because defendants filed the within motion to dismiss and the
previous motion to dismiss, "[p]laintiffs were forced to
aggressively litigate" and this court has been required to
adjudicate the matter, "all contrary to the express purpose of
contractual arbitration to Plaintiffs' prejudice vis-à-vis time
delay, unnecessary litigation and litigation's attendant cost."
(Plaintiffs' response, page 9.)

Moreover, plaintiffs aver that the arbitration provision itself is invalid, and that their claims in this matter fall outside the scope of the arbitration provision because they are unrelated to the agreement at issue.

Regarding the integration clause, plaintiffs contend that defendants' oral promise and Superior's failure to manufacture the bathtub are admissible as evidence of defendants' "pre-meditated intent to convert". (Plaintiffs' response, page 11.) Plaintiffs further aver that "[t]he integration clause in no way speaks to Plaintiffs' claim of Defendants' national effort [to] retrieve funds from unwary first-time franchisees never intending to perform in any respect." (Id.)

In response to defendants' remaining arguments, plaintiffs contend that gist-of-the-action doctrine argument does not apply because this action is not merely a breach of contract action; that plaintiffs are not required to plead their RICO claim with specificity because the RICO statute is self-descriptive, and that their UTPCPL claim should survive because the initial bathtub delivery was intended for personal and household use, as well as commercial use. Plaintiffs further contend that Mrs. Morales' loss of consortium claim should survive as derivative of each tort claim, and suggest that

defendants' alleged conduct caused Mr. Morales to suffer
emotional distress giving rise to Mrs. Morales' claim for loss
of consortium.  Finally, plaintiffs aver that their Amended
Complaint supports an award of punitive damages.  Plaintiffs
offer little legal, if any, discussion in support of each of
these contentions.

## DISCUSSION

Pennsylvania law governs the within controversy
because the agreement between Mr. Morales and Superior contains
a choice-of-law provision selecting Pennsylvania law.
(Defendant's motion, Exhibit A ("Agreement by and between
Superior Living Products, LLC and Rafael Alberto Morales")
(hereinafter "Agreement"), paragraph 20.)  That provision
states:

> This Agreement is to be construed in accordance with
> and governed by the internal laws of the State of
> Pennsylvania without giving effect to any choice of
> law rule that would cause the application of the laws
> of any jurisdiction other than the internal laws of
> the State of Pennsylvania to the rights and duties of
> the parties.

Agreement, paragraph 20.

Because this dispute arises in the context of
interpretation and performance of the Agreement, I conclude that
the law of Pennsylvania applies to this matter.

## Arbitration Clause

Defendants contend, as an initial matter, that all of plaintiffs' claims are barred by the Agreement's arbitration clause, which states, in pertinent part:

> If the parties are unable to resolve any dispute, controversy or claim arising under this Agreement...such Dispute will be submitted to the Vice President (or higher) of each of the Parties for Resolution.  If such officers are unable to resolve the Dispute within 10 days after submission to them, the dispute shall be solely and finally settled by arbitration....The award of the arbitration panel will be the sole and exclusive remedy between the parties regarding any and all claims and counterclaims with respect to the subject matter of the dispute and shall be final and binding upon the parties.

Agreement, paragraph 21.

Defendants aver that the arbitration provision is valid and that plaintiffs' claims fall squarely within the scope of the clause.  Therefore, defendants contend that this matter should not be litigated, but rather should be resolved through arbitration.

Plaintiffs contend that defendants have waived their claim for contractual arbitration because they did not immediately file a motion to compel arbitration upon appearing in this matter, but rather engaged in motion practice to dismiss the original Complaint and the Amended Complaint.  According to plaintiffs, defendants' failure to move to compel arbitration

has forced plaintiffs to incur the time delay and costs associated with litigation.

Moreover, plaintiffs aver that the arbitration provision itself is invalid for "(1) requiring a claimant proceed through some non-specific form of pre-claim dispute process through respondent's internal officers, then (2) requiring initiation of arbitration in a jurisdiction unrelated to the situs of the cause of action; (3) for failure to identify with specificity that this claim is to be submitted to arbitration; and (4) at arbitration, precluding punitive and 'special' damages." (Plaintiffs' response, page 10.) Plaintiffs further aver that their claims in this matter fall outside the scope of the arbitration provision because they are unrelated to the agreement at issue.

The United States Court of Appeals for the Third Circuit has expressed a strong preference for arbitration, and "waiver is not to be lightly inferred". PaineWebber Inc. v. Faragalli, 61 F.3d 1063, 1068 (3d Cir. 1995)(internal citation omitted). Waiver normally will be found only "where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." (Id. at 1068-69)(internal citation omitted).

- 15 -

The touchstone for determining whether the right to arbitration has been waived is prejudice.  Id. at 1069.  Other relevant factors include "the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion to stay the district court proceedings; the extent of its non-merits motion practice; [and] its assent to the district court's pretrial orders".  Id. at 1069 n.4.

Plaintiffs do not contend that the parties have engaged in any discovery.  However, plaintiffs do aver, and a review of the docket of this matter reveals, that defendants filed two motions to dismiss on the merits of this matter, and that defendants opposed plaintiffs' two motions to enlargement of time to file the Amended Complaint in this matter. Additionally, the parties participated in two telephonic settlement conferences and an in-person settlement conference before United States Magistrate Judge Henry S. Perkin.

As of the date of this Opinion, defendants have not filed a motion to compel arbitration, and their original motion to dismiss does not invoke the arbitration provision.  Moreover, there is no indication that defendants notified plaintiffs of their intention to invoke the arbitration clause at any time

prior to the filing of the within motion on December 1, 2008, more than a year after the commencement of this action in October 2007.

Therefore, although there is no indication that the parties have engaged in extensive discovery in this matter, I conclude that defendants' motion practice in this case amounts to pretrial activity which is inconsistent with an intent to arbitrate the matter. See Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1161 (5th Cir. 1986).

Moreover, defendants' failure to seek to compel arbitration has resulted in prejudice to plaintiffs. Specifically, plaintiffs have incurred the costs associated with responding to two motions to dismiss, the first of which indicates no intent to seek arbitration, and have participated in two telephonic settlement conferences and one in-person settlement conference.

Defendants' engagement in pretrial activity inconsistent with an intent to arbitrate this matter has resulted in prejudice to plaintiffs.  Accordingly, I conclude that defendants have waived their right to invoke the arbitration provision contained within the Agreement, and deny their motion to dismiss to the extent it seeks to do so.  I

therefore do not address plaintiffs' argument that the arbitration provision is otherwise invalid.

### Tort Claims

Defendants contend that Count I (negligent misrepresentation), Count II (fraudulent misrepresentation), and Count IV (fraud) should be dismissed because those counts allege claims for fraud in the inducement and are barred by the Agreement's integration clause.  Specifically, defendants aver that under the integration clause, any promise or statements made by defendant Scott that are not embodied in the Agreement cannot be considered in this litigation.  Alternatively, defendants aver that those counts are barred by the gist-of-the-action doctrine.

Plaintiffs contend that the integration clause does not bar the admissibility of defendants' oral promise to manufacture the bathtubs because it is "evidence of Defendants' pre-meditated intent to convert".  Plaintiffs cite no authority in support of this contention.  In response to defendants' gist-of-the-action doctrine, plaintiffs suggest that this action is not "merely a breach of contract" action.  (Plaintiffs' response, page 12.)

The Agreement provides, in pertinent part:

> 26.  Miscellaneous
>
> This Agreement and any attachments hereto constitute the entire Agreement of the parties regarding the subject matter herein, and supersedes any prior understanding or agreements between them regarding its subject matter.  In the event of a conflict between the terms of this Agreement and the terms of an Agreement, the terms of this Agreement shall control.
>
> . . .
>
> 27.  Entire Agreement
>
> This Agreement represents the entire understanding of the parties of the subject matter herein.  No modification or change of terms of this Agreement shall bind either party unless in writing signed by both parties.

Agreement, paragraphs 26-27.

Pennsylvania law prohibits recovery on a claim of fraud in the inducement where the contract represents a fully integrated written agreement.  Interwave Technology, Inc. v. Rockwell Automation, Inc., 2005 WL 3605272, at *18 (E.D.Pa. December 30, 2005)(Pratter, J.)(internal citation omitted). Here, the integration clause makes clear that the Agreement and any attachments to it "constitute the entire Agreement of the parties regarding the subject matter herein" and "represent[] the entire understanding of the parties of the subject matter herein".  (Agreement, paragraphs 26-27.)

- 19 -

Based on the merger clause in the Agreement at issue here, I consider the Agreement to be fully integrated. Therefore, plaintiffs are prohibited from recovering on any claims of fraud in the inducement. Specifically, plaintiffs' negligent misrepresentation, fraudulent misrepresentation, and fraud claims (Counts I, II and IV, respectively), each of which allege fraud in the inducement,[3] are barred by the integration clause.

Moreover, I note that under Pennsylvania law, a plaintiff is barred from asserting tort claims if the "gist of the action" arises out of a contractual relationship. <u>Horizon Unlimited, Inc. v. Silva</u>, 1998 U.S. Dist. LEXIS 2223, at *14 (E.D.Pa. February 26, 1998)(Shapiro, J.) (<u>citing</u> <u>Bash v. Bell Telephone Co.</u>, 411 Pa.Super.347, 601 A.2d 825 (1992)).

The gist-of-the-action doctrine bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of the contract. <u>McCloskey v. Novastar Mortgage, Inc.</u>,

---

[3]     See also paragraph 25 of the Amended Complaint, which avers that "Defendants fraudulently induced Plaintiff, Raphael Morales, to enter the Agreement knowing that Defendant, Superior, would never abide by the terms of the Agreement, for Defendant's purpose of, at the very least, obtaining and keeping the Plaintiffs' funds aforesaid."

2007 WL 320287, at *6 (E.D.Pa. Jan. 29, 2007) (Stengel, J.)
(citing eToll, Inc. v. Elias/Savion Advertising, Inc.,
811 A.2d 10, 14 (Pa.Super. 2002)).

If the complaint "essentially alleges a breach of
duties flowing from an agreement between the parties, the action
is contractual in nature." Titelman v. Rite Aid Corp., 2001 U.S.
Dist. LEXIS 24049, at *18 (E.D.Pa. November 9, 2001)
(McLaughlin, J.) (internal citation omitted).

Courts have held that fraudulent inducement claims are
not barred by the gist-of-the-action doctrine where the alleged
fraud is collateral to the contract. See eToll, Inc., 811 A.2d
at 14. However, fraudulent inducement claims are barred by the
gist-of-the-action doctrine where the claims relate to the
performance of the contract.  Retail Brand Alliance, Inc. v.
Rockvale Outlet Center, LP, 2007 WL 403885, at *9 (E.D.Pa.
January 31, 2007) (Stengel, J.).

In this case, plaintiffs' breach of contract claim
avers that defendants' alleged representation that the bathtubs
at issue were manufactured by Superior constitutes a material
breach of contract.  Because the negligent and fraudulent
misrepresentation claims and the fraud claim essentially allege
that defendants failed to honor their alleged promise to deliver
bathtubs manufactured by Superior in accordance with the

parties' agreement, I conclude that those claims are related to
the performance of the contract and essentially duplicate the
breach of contract claim.

Accordingly, I grant defendants' motion to dismiss
Counts I, II and IV of the Amended Complaint as barred by the
integration clause and the gist-of-the-action doctrine.

<u>Count III- Breach of Contract</u>

Defendants contend that plaintiffs' claim for breach
of contract should be dismissed because there is no contract
term that Superior itself manufacture the bathtubs at issue.
Moreover, defendants aver that because the contract is by and
between Superior and Mr. Morales, any claim by Mrs. Morales for
breach of contract should be dismissed.

Plaintiffs offer no legal analysis in opposition to
defendants' motion to dismiss Count III, but suggest that parol
evidence is admissible to support their allegation that
defendants promised to deliver bathtubs manufactured by
Superior.  In support of this argument, plaintiffs aver that
"the elements rendering parol[e] evidence admissible" require
factual analysis.

Under Pennsylvania law, "where prior fraudulent
representations are alleged, the parol evidence rule bars such
representations where the written agreement: (1) contains terms

which directly deal with the subject matter of the alleged oral
representation; and (2) represents the entire contract between
the parties, particularly where the written agreement also
contains an integration clause." <u>Atlantic Pier Assocs., LLC v.</u>
<u>Boardakan Rest. Partners</u>, ___ F.Supp.2d ___, 2009 WL 2601108,
at *9 (E.D.Pa. August 20, 2009)(Robreno, J.)(<u>citing</u> <u>1726 Cherry</u>
<u>St. Partnership by 1726 Cherry Street Corp. v. Bell Atlantic</u>
<u>Properties, Inc.</u>, 653 A.2d 663, 666 (Pa.Super. 1995)).

     Although parol evidence "may be introduced based on a
party's claim that there was a fraud-in-the-execution of the
contract, <u>i.e.</u>, that a term was fraudulently omitted from the
contract, parol evidence may not be admitted based on a claim
that there was fraud-in-the-inducement of the contract, <u>i.e.</u>,
that an opposing party made false representations that induced
the complaining party to the contract." <u>Atlantic Pier Assocs.</u>,
2009 WL 2601108, at *9 n.17 (<u>quoting</u> <u>Yocca v. Pittsburgh</u>
<u>Steelers Sports, Inc.</u>, 578 Pa. 479, 498 n.26, 854 A.2d 425, 437
n.26 (2004)).

     Plaintiffs here do not identify a provision of the
Agreement requiring defendants to provide a showroom bathtub.
However, Exhibit B to the Agreement includes "1 - 26" Walk-in
bathtub for showroom" on a list of items included in defendants'

capital investment for Mr. Morales' territory.  This appears to be the Agreement's only reference to a showroom bathtub.

Exhibit B does not state that the showroom bathtub would be manufactured by Superior, nor does any provision of the Agreement state that the bathtubs to be distributed by Mr. Morales would be manufactured by Superior.  Indeed, the Agreement does not suggest that Superior manufactures bathtubs at all.  To the contrary, the preamble to the Agreement states that "Superior is engaged in the business of <u>distributing</u> bath and related products (hereinafter collectively referred to as the 'Products')" (emphasis added).  (Agreement, page 1.)

Additionally, the Agreement defines "Product(s) as "those SUPERIOR bath and other products that SUPERIOR may offer from [time] to time." (Agreement, paragraph 1.)  Thus, it is clear that the "products" referred to in the Agreement are products distributed by Superior.  There is no indication that the products are manufactured by Superior.

Therefore, I conclude that the Agreement contains terms which directly deal with the subject matter of the alleged oral representation, that is, the definition of the products at issue.  <u>See</u> <u>Atlantic Pier Assocs.</u>, 2009 WL 2601108, at *9.  Moreover, as discussed above, the Agreement contains an integration provision stating that the Agreement and its

- 24 -

attachments represent the entire contract between the parties. (Agreement, paragraphs 26-27.)

Moreover, plaintiffs do not allege fraud in the execution of the contract.  That is, they do not suggest that defendants fraudulently omitted from the written contract a provision indicating that the bathtubs would be manufactured by Superior.  Rather, they allege that defendants falsely represented that Superior would manufacture the bathtubs in order to induce Mr. Morales to enter the Agreement.  Therefore, I conclude that under Pennsylvania law, parol evidence is not admissible in this context.  <u>Yocca</u>, <u>supra</u>.

Because plaintiffs have not alleged a breach of any term contained within the Agreement, and because I conclude that parol evidence is inadmissible to prove fraud in the inducement of this contract, I grant defendants' motion to dismiss Count III and dismiss that count from the Amended Complaint.

<u>Count V - RICO Violation</u>

Defendants contend that the Amended Complaint fails to state a RICO claim because Count V fails to identify which of the four statutory RICO violations apply, and fails to allege a pattern of racketeering activity as defined by 18 U.S.C.

§ 1961(1).  Specifically, defendants aver that plaintiffs fail to allege a pattern of racketeering activity as required and defined by the statute.

In response, plaintiffs aver that "A Plaintiff need not plead any causes of action (merely facts with request for relief) or any facts when the cited statute is self-descriptive." (Plaintiffs' response, page 13.)  Moreover, plaintiffs contend that a heightened pleading standard is not required for RICO claims, but that in any event, the Amended Complaint offers sufficient specificity.

Although RICO claims are generally subject to the notice pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure,[4] a fraud-based RICO claim is subject to the heightened pleading standards of Federal Rule 9(b).  Lum v. Bank of America, 361 F.3d 223-224 (3d Cir. 2004).

As I noted in my September 10, 2008 Order directing plaintiffs to file an amended complaint, pursuant to Rule 9(b), "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" Frederico v. Home Depot, 507 F.3d 188, 200 (3d Cir. 2007)(quoting Lum, 361 F.3d at 223-224). To satisfy this standard, "the plaintiff must plead or allege the date, time and

---

[4]     Rose v. Bartle, 871 F.2d 331, 356 (3d Cir. 1986).

place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." Id.

Count V alleges that defendants engaged in a scheme to defraud by "inducing individuals to enter into dealership agreements such as described herein, to that person's financial detriment and Defendants' financial gain, knowing same would not be performed." (Amended Complaint, paragraph 46.)  In support of this allegation, Count V avers that plaintiffs were contacted by a third party who advised plaintiffs that "he and six (6) or so other dealers located throughout the country had lost their 'buy-in' funds to Superior as a result of strikingly similar 'bait and switch' tactics by Defendants." (Amended Complaint, paragraph 50.)

The RICO statute provides, in pertinent part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States District Court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. . . .

18 U.S.C. § 1964(c).

Section 1962 contains four subparagraphs.  Although plaintiffs do not identify which subparagraph applies in this case, they apparently are proceeding under subparagraph (c), which states:

> It shall be unlawful for any person employed by or
> associated with any enterprise engaged in, or the
> activities of which affect, interstate or foreign
> commerce, to conduct or participate, directly or
> indirectly, in the conduct of such enterprise's
> affairs through a pattern of racketeering activity or
> collection of unlawful debt.

18 U.S.C. § 1962(c).  Thus, to state a claim for violation of §

1962(c), plaintiffs must allege "(1) conduct (2) of an

enterprise (3) through a pattern (4) of racketeering activity".

Lum, 361 F.3d at 223.

"Racketeering activity" is defined as one of the

predicate acts identified in the statute, which lists various

state and federal offenses.  Racketeering activity includes

conduct indictable under the federal mail and wire fraud

statutes.  18 U.S.C. § 1961(1).  A "pattern of racketeering

activity" requires "at least two acts of racketeering activity,

one of which occurred after the effective date of this chapter

and the last of which occurred within ten years...after the

commission of a prior act of racketeering activity".  18 U.S.C.

§ 1961(5).

When mail or wire fraud is the predicate act to a RICO

claim, plaintiff must allege that mailings are related to the

underlying fraudulent scheme, even though mailings need not be

an essential element of the scheme and need not themselves

contain any misrepresentations.  Bonavita Electric Contractor,

Inc. v. Boro Developers, Inc., 87 Fed.Appx. 227, 231

(3d Cir. 2003).

The Amended Complaint lists the following alleged

"predicate acts":

> (a)  The use of interstate commerce and/or mail for the attempted delivery of a non-Superior bathtub, 18 U.S.C. 18 U.S.C. § 1961(1)(B);
>
> (b)  Scott's telephone conversation with Plaintiff where Scott told Plaintiff that Superior manufactured its own bathtubs, 18 U.S.C. § 1961(1)(B);
>
> (c)  Scott's telephone conversation with Plaintiff and Cohen which determined that Superior would be unable to satisfy Plaintiff's potential client;
>
> (d)  Scott's telephone conversation with Plaintiff promising delivery of the bathtub;
>
> (e)  Superior advertising franchise opportunities in magazines;
>
> (f)  Emailing the contract to Plaintiff requiring execution and return by mail;
>
> (g)  Faxing and e-mailing leads;
>
> (h)  Emailing and telephoning Plaintiff regarding [the operative facts alleged in the Amended Complaint]; and
>
> (i)  Mailing, e-mailing, telephoning, and faxing the Witness and six (6) or so other dealers all with a view of promising a business opportunity known by Defendants never to exist to obtain Plaintiffs [sic] and these other individuals [sic] money.

Amended Complaint, paragraph 53.

Other than the first two alleged predicate acts, the Amended Complaint does not identify which provision(s) of the "racketeering" definition apply to any of the alleged predicate acts.  Because they do not identify any violation other than mail and wire fraud, I assume plaintiffs intended to aver that each of the alleged acts of racketeering violate the federal wire and/or fraud statutes.

As noted above, fraud-based RICO claims are subject to the heightened pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure.  In this case, the Amended Complaint fails to plead a RICO claim with sufficient specificity as to "place the defendant on notice of the 'precise misconduct with which [it is] charged.'" <u>Frederico</u>, 507 F.3d at 200.  Plaintiffs have not alleged the date, time and place of the alleged "predicate acts" listed in paragraph 53 of the Amended Complaint, and the related facts.  <u>Id.</u>  Moreover, plaintiffs have not "otherwise inject[ed] precision or some measure of substantiation into their fraud allegations.  <u>Id.</u>

On the contrary, plaintiffs have made general averments about the alleged misrepresentations and fraudulent statements.  For example, they aver that "[d]uring negotiations for the Agreement, Defendant, Scott, misrepresented to Plaintiff

that Defendant, Superior, manufactured the bathtubs" (Amended

Complaint, paragraph 10) and list as an alleged predicate act

"Scott's telephone conversation with Plaintiff where Scott told

Plaintiff that Superior manufactured its own bathtubs" (Amended

Complaint, paragraph 53(b)). Plaintiffs offer no specific

details about when and where this conversation occurred or

otherwise substantiated the allegation.

Similarly, the Amended Complaint contains no specific

details about the other telephone conversations and incidents of

advertising, faxing, mailing, and e-mailing listed as "predicate

acts" in paragraph 53.  Moreover, with regard to plaintiffs'

suggestion that defendants entered the Agreement "knowing that

Defendant, Superior, would never abide by the terms of the

Agreement" (Amended Complaint, paragraph 25), plaintiffs allege

no specific facts to support this contention.  Therefore, I

conclude that plaintiffs have not pled the alleged fraudulent

conduct with sufficient particularity as to place defendants on

notice, and have not complied with the heightened pleading

standard set forth in Rule 9(b).

Accordingly, I grant defendants' motion to dismiss

Count V of the Amended Complaint for failure to plead that count

with sufficient specificity.  Because my September 10, 2008

Order dismissing plaintiffs' original Complaint specifically

indicated that plaintiffs' RICO claim must be pled with
particularity, I decline to permit further amendment of the
Amended Complaint for the purpose of providing more specificity.

Count VI - UTPCPL Violation

Defendants contend that Count VI for violation of the
UTPCPL should be dismissed because the transaction at issue was
a commercial transaction, not a consumer transaction.
Plaintiffs aver that the claim should survive because the
bathtub could be used for personal and household use, as well as
commercial use.

Pennsylvania's UTPCPL provides, in pertinent part:

> Any person who purchases or leases goods or
> services primarily for personal, family or
> household purposes and thereby suffers any
> ascertainable loss of money or property, real or
> personal, as a result of the use or employment by
> any person of a method, act or practice declared
> unlawful by section 3 of this act, may bring a
> private action to recover actual damages or one
> hundred dollars ($100), whichever is greater.

73 P.S. § 201-9.2(a)[5] (emphasis added).

Thus, to be actionable under the UTPCPL, a purchase
must be primarily for personal, family or household purchases.
See Balderston v. Metronic Sofamor Danek, Inc., 152 F.Supp.2d
772, 779 n.5 (E.D.Pa. 2001)(Surrick, J.)(aff'd, 285 F.3d 238 (3d
Cir. 2002)).

---

[5]     Act of November 24, 1976, P.L. 1166, No. 260, § 1, as amended,
73 P.S. § 201-9.2.

The Agreement in this case makes clear that the transaction between the parties was commercial, not a consumer transaction.  Specifically, it states that Mr. Morales was "engaged in the business of bathroom renovation, bathroom product installation and bathroom product sales" and "wishe[d] to purchase Superior's products in an effort to market, sell, distribute and install Superior's products as part of [his] business".  (Agreement, page 1.)

Moreover, the Agreement does not expressly contemplate any personal use of Superior products by Mr. Morales.  As noted above, the Agreement's only reference to the showroom bathtub appears in a list of "capital investment" for Mr. Morales' territory, and describes the bathtub's purpose only as "for showroom".  (Agreement, Exhibit B.)

Although plaintiffs suggest that the showroom bathtub at issue could be used for household use as well as showroom use, the Agreement contains no provision to this effect.  Therefore, I conclude that to the extent the Agreement required defendants to deliver a bathtub to Mr. Morales, the bathtub was not intended primarily for Mr. Morales' personal, family or household use.  The UTPCPL therefore does not apply to the within transaction.

Accordingly, I grant defendants' motion to dismiss Count VI, and dismiss that count from the Amended Complaint.

### Count VII – Loss of Consortium

Count VII avers that as a result of defendants' conduct, Mrs. Morales "has lost and/or will lose the companionship, consortium, society, and services of her husband, Plaintiff, Raphael Morales, to her great personal detriment and loss."  Defendants contend that a claim for loss of consortium arises only from one spouse's physical injury, and therefore must be dismissed in this case because the Amended Complaint does not allege that Mr. Morales has suffered any physical injury.

Under Pennsylvania law, a spouse's right to recover for loss of consortium derives only from the other spouse's recovery.  See Szydlowski v. City of Philadelphia, 134 F.Supp.2d 636, 639 (E.D.Pa. 2001)(Joyner, J.).  Because I have dismissed all of plaintiffs' substantive claims, Mrs. Morales' derivative claim for loss of consortium also must fail.  Accordingly, I grant defendants' motion to dismiss Count VII, and dismiss that count from the Amended Complaint.

### Punitive Damages

Because I have dismissed the Amended Complaint in its entirety, defendants' motion is moot to the extent it seeks

dismissal of plaintiffs' prayer for punitive damages.

Accordingly, I do not address the issue.

## CONCLUSION

For all the foregoing reasons, I grant Defendants'
Motion to Dismiss Plaintiffs' First Amended Complaint and
dismiss the Amended Complaint in its entirety.